(No. 19069.—⬛)
OSCAR NELSON, Auditor of Public Accounts, Appellee, *vs.*
THE TOLUCA STATE BANK *et al.*—(R. M. BARNES,
Appellant.)

*Opinion filed February 20, 1929.*

R. M. BARNES, *pro se,* (BARNES, MAGOON & HORTON,
of counsel,) for appellant.

OSCAR E. CARLSTROM, Attorney General, and DAVID J.
KADYK, (GEORGE W. HUNT, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This is an appeal from an order of the circuit court of
Marshall county sustaining a motion by appellee, Oscar
Nelson, Auditor of Public Accounts of Illinois, to set aside
an order granting appellant, R. M. Barnes, leave to file an

amended and supplemental cross-bill and denying him leave to file such cross-bill.

On November 20, 1926, the Toluca State Bank, a corporation organized and existing under the law of this State relating to banks and banking, was closed by appellee. On February 11, 1927, the First State Bank of Wenona was appointed receiver of the Toluca State Bank by appellee. On March 25, 1927, appellee, represented by the Attorney General, filed his bill in the circuit court of Marshall county alleging that the Toluca State Bank was organized under the law of this State relating to banks and banking, with a capital stock of $52,500; that it exercised its charter powers and conducted a general banking business in the village of Toluca from May 19, 1914, until November 20, 1926; that an examination of the bank immediately prior to November 20, 1926, showed that by reason of the depreciation in value of the assets thereof the total liabilities of the bank exceeded its total available resources by an amount of more than the amount of the capital stock, surplus and undivided profits, and that the capital stock was impaired to an amount in excess of its par value; that appellee took possession of the bank on November 20, 1926, and on February 11, 1927, appointed the First State Bank of Wenona receiver of the Toluca State Bank; that the First State Bank of Wenona accepted the appointment, gave bond and took possession of the books and property of the Toluca State Bank; that appellee forthwith published a notice to all the depositors and creditors of the bank to file their claims; that it will be necessary to compromise with certain debtors of the bank, to determine the rights of debtors of the bank to set off the amount of their deposits in the bank against their debts to it, to determine the rights of persons having papers and securities in safety deposit boxes in the bank, to adjudicate the rights of persons having claims against it, to sell the real and personal estate of the bank, and to declare dividends on the amounts coming into

the hands of the receiver, and for the receiver to have the aid of the court in discharging his duties. The bill sets out the names of the officers and directors of the bank and the names and addresses of all the stockholders, with the amount of stock owned by each of them. The Toluca State Bank and all of its stockholders, including appellant, were made parties defendant to the bill. The prayer of the bill was that an order be entered finding the condition of the bank to be as set out in the bill; that appellee closed it and appointed a receiver therefor; that he is the legal custodian of it and authorized to convert its assets into cash; that he be authorized to compromise, adjust and settle all litigation and controverted questions relating to the collection of notes and other items due and owing the bank, upon such terms as he may deem just and the court may direct; that he be empowered to allow renters of safety deposit boxes in the bank to open them and take the contents therefrom, and to make such settlements with other banks as the court may deem just and proper; that he be empowered to sell the real and personal property of the bank; that the court enter an order fixing a day on or before which all claims against it must be filed; that the court determine the rights of depositors to set off the amounts of their deposits against their obligations to the bank; that the assets of the bank, through appellee, be reduced to cash under the direction of the court and the claims against the bank be adjudicated by the court; that he have the aid of the court in declaring dividends to those entitled thereto, and for general relief.

To the bill appellant filed his answer, in which he admitted the allegations of the bill concerning the organization and capitalization of the bank and its assets and liabilities as carried on its books; neither denied nor admitted the allegations concerning the items alleged to be carried as assets, which were alleged not to be worth the amounts at which they were carried on the books, or the allegations

concerning the excess of liabilities over assets; denied that the Auditor ever lawfully took possession of the bank or "that there was ever any legal or lawful receiver appointed or acting for it" or its property; denied the allegations concerning the necessity to compromise, compound or adjust any debts or accounts owing to the bank; admitted that certain depositors also owed debts to the bank, and stated that they ought to be allowed to set off the amount of their deposits against their debts; neither admitted nor denied the allegations concerning persons having safety deposit boxes or concerning the necessity to sell real estate of the bank; admitted the names of the officers and directors of the bank were as alleged; stated he was unadvised as to the correctness of the names of the stockholders but admitted that he was at the time the bank was closed, and for a period of not exceeding ten months prior thereto, the owner of fifty-one shares of the capital stock of the bank, and denied that the complainant was entitled to any of the relief sought. The answer contained allegations occupying eighteen pages of the printed abstract, to which exceptions were sustained. These allegations are also contained in the amended and supplemental cross-bill which appellant sought to file.

Although there is an assignment of error questioning the correctness of the order sustaining exceptions to the answer, that question is not involved in this appeal.

After the exceptions to the answer had been sustained the cause was on July 1, 1927, referred to the master in chancery. On October 3, 1927, appellant filed a cross-bill, which was on January 7, 1928, amended by leave of court, and the court sustained a demurrer to the cross-bill as amended. Appellant has assigned as error the order of the court sustaining this demurrer, but that alleged error is not involved in this appeal.

On February 4, 1928, appellant obtained leave of court to file, and did file, an amended supplemental cross-bill.

This cross-bill alleges the organization and capitalization of the Toluca State Bank and the names of its directors and officers; that five times a year the bank published reports of its condition to appellee; that appellee for the preceding five years caused examinations of the bank to be made twice a year and had full knowledge of the actual condition, solvency and the amount of the assets and liabilities of the bank; that the bank had been insolvent for three years to appellee's knowledge, and that with such knowledge he allowed the bank to publish untrue statements as to its condition and to do a banking business and receive deposits; that appellant, relying upon the published statements of the bank's condition, on January 6, 1926, bought fifty shares of the capital stock and paid therefor $5000; that the officers and directors of the bank had caused and permitted numerous fictitious, illegal, excessive and improper loans to be made by it and permitted its money to be withdrawn in violation of law. A list of the alleged fraudulent, excessive, illegal and improper loans as found on the final examination of the bank, in the amount of $128,151.39, is set out, and it is alleged that they have no value in excess of five per cent of their face value. It is further alleged in the cross-bill that certain worthless checks in the amount of $6600 were carried on the books of the bank as cash; that appellee had knowledge of such facts, and with such knowledge permitted the bank to do business and receive deposits for two years while it was insolvent; that appellee on November 20, 1926, closed the bank and assumed to appoint a receiver therefor; that the statute authorizing appellee to close banks, take charge of their property and appoint receivers therefor under certain circumstances and requiring the creditors of such banks to prove their claims to his satisfaction is unconstitutional, because it deprives stockholders and creditors of such banks of their property without due process of law and confers judicial authority upon an executive officer; that the origi-

nal bill asks for confirmation of the appointment of the receiver by appellee; that no legal receiver has been appointed because of the invalidity of the statute; that it will be unnecessary for any receiver of the bank to compromise or compound any of the debts owing to it; that at the time of closing the bank three of its five directors, William C. Rithmiller, Henry Christ and Edward Haugens, employed and consulted George W. Hunt as their counsel "to protect their interest in the failure of the bank, and to protect said directors, as far as possible, in reference to their liability, both as stockholders and directors of said bank;" that Haugens also employed D. H. Gregg as counsel; that Gregg was a personal creditor of Chauncey P. Ball, vice-president and director of the bank, to the amount of $2000, and that he made a colorable transfer of the note evidencing said indebtedness so he might act as referee in bankruptcy should Edwin G. Ball, president of the bank, or Chauncey P. Ball, be adjudged bankrupt; that Gregg, Hunt and Lyon Karr, president of the First State Bank of Wenona, after the latter had volunteered to act on a committee to re-organize said bank and to take stock in it and do everything possible to keep it from going into receivership, were surreptitiously endeavoring to throw the bank into receivership, with the First State Bank of Wenona as receiver; that a deal was entered into by appellee, Karr and Hunt whereby it was agreed that if appellee would appoint the First State Bank of Wenona receiver, Karr, as president of the First State Bank of Wenona, would have Hunt appointed attorney for such receiver, and Hunt would then be in a position to, and would, protect Haugens, Christ and Rithmiller from their liability as directors; that in order to bring about the receivership, Hunt, Gregg and the agents of appellee spread broadcast various mis-statements and called meetings of depositors, and at such meetings made misrepresentations to the depositors, including representations that if the re-organization was effected and the

bank kept out of receivership the stock of Gaylord Ball and Chauncey P. Ball would be transferred to appellant and that said stock was worth $27,000, all of which they knew to be untrue; that since the bank was closed, Haugens, for the purpose of alienating and hiding his property, had made a mortgage for $24,000, and later another mortgage for $8000, on his real estate, and also fraudulently deeded a valuable farm to his son; that Christ had for the same purpose made a mortgage on his property for $24,000, and Rithmiller for the same purpose had executed a mortgage on his property for $24,000; that these conveyances and incumbrances had been executed after consultations with and on the advice of Hunt for the purpose of hiding their property; that if the First State Bank of Wenona is allowed to act as receiver of the Toluca State Bank, Hunt will act as its attorney and will not seek to set aside these conveyances but will serve the directors against the interests of the creditors of the bank; that Edwin G. Ball has been adjudged a bankrupt and Michael Fahy has been appointed trustee of his estate; that Fahy was a party to the scheme to throw the bank into receivership and was appointed trustee of the bankrupt's estate by Gregg, who is referee in bankruptcy, as a reward for his activity in having the bank go into receivership; that after the bank was closed Chauncey P. Ball made a pretended trust deed covering all of his property to B. J. Ghiglieri to secure a pretended indebtedness of $68,000; that the deed was made without the knowledge or consent of Ghiglieri and was never delivered to him and he never accepted the trust deed and refuses to act as trustee thereunder; that Chauncey P. Ball has made a pretended conveyance or transfer to James E. Shanklin of all of his property, both real and personal, for the purpose of placing his property beyond the reach of the receiver and creditors of the bank, and that Shanklin has filed a bill for partition of the property assigned and transferred to him by said pretended convey-

ance. The amended supplemental cross-bill further alleges that on December 27, 1927, a petition signed by a majority in number of the depositors and creditors of the Toluca State Bank, to whom said bank was indebted in the aggregate of more than half its total indebtedness, was filed with appellee asking him to remove the First State Bank of Wenona as trustee of the Toluca State Bank and appoint B. J. Ghiglieri as such receiver; that the Auditor said he wanted a few days' time to check up on the petition; that a campaign was entered into to get the signers of the petition to withdraw their names therefrom; that appellee refused and declined, and still refuses and declines, to remove the First State Bank of Wenona as receiver and to appoint Ghiglieri or anyone else as receiver in its stead.

The prayer of the amended supplemental cross-bill is, that the court adjudge that the First State Bank of Wenona is not and never has been the lawful receiver of the Toluca State Bank; that the latter bank is insolvent and that a fit and proper and disinterested person be appointed receiver thereof by the court to collect the assets and sell the property of said bank under the direction of the court and pay the depositors of the bank the amounts of their deposits *pro rata,* so far as the funds will extend; that if any balance remains after paying the depositors in full, such balance be paid to the parties found to be entitled thereto according to their rights; that the receiver be empowered to bring and prosecute such suits as are necessary to enforce against the directors of the bank, and each of them, their liability for nonfeasance and negligence in managing the affairs of the bank; that Shanklin be enjoined from prosecuting his suit for partition; that Chauncey P. Ball be enjoined from transferring or disposing of or encumbering any of the real estate owned or formerly owned by himself and Edwin G. Ball in common; that the conveyances, mortgages and trust deeds mentioned in the cross-bill as having been executed by Edwin G. Ball, Chauncey P. Ball,

Bernard Haugens, William Rithmiller and Henry Christ be set aside and declared void as against the rights of the stockholders and depositors of the Toluca State Bank; that if the court find the Banking act not invalid, that then appellee be required to remove the First State Bank of Wenona as receiver and appoint in his stead B. J. Ghiglieri; that appellee be decreed to be personally liable to the stockholders, creditors and depositors of the Toluca State Bank in such sums as they have been damaged by the negligence, neglect and fraud of appellee, and for general relief.

As above stated, the court, on motion of appellee vacated and set aside its order granting appellant leave to file his amended and supplemental cross-bill, and this appeal is from that order.

By the provisions of section 11 of chapter 16½, entitled "Banks," should the capital stock of any bank organized under that act become impaired the State Auditor is authorized to have the impairment made good by assessment of the stockholders or a reduction of the capital stock of such bank, if the reduction should not bring the capital below the conditions there named. If the capital stock of the bank should remain impaired for thirty days after notice by the Auditor he is authorized by that section to enter suit against each stockholder, in the name of the People, for the use of the bank, for his or her *pro rata* proportion of the impairment, with all costs and reasonable attorney's fees to be taxed by the court. That section further provides that if it appears from the reports made to the Auditor under the act, or from any examination made by or on behalf of the Auditor, that the conditions of any bank organized under the act are such that the impairment of the capital stock cannot be made good, or that the business of any such bank is being conducted in an illegal, fraudulent or unsafe manner, the Auditor may, in his discretion, without having taken the steps to make good the impaired capital stock, forthwith appoint a receiver and require of

him such bond and security as he deems proper. Such receiver, under the direction of the Auditor, shall take possession of the books, records and assets of every description of such bank, collect all debts, dues and claims belonging to it, and upon the order of a court of record of competent jurisdiction may sell or compound all bad or doubtful debts, and may sell all the real and personal property of such bank on such terms as the court shall direct. The Auditor, upon appointing a receiver, shall cause notice to be given in such newspaper as he may direct, for three consecutive months, calling on all persons who may have claims against such bank to present and make legal proof of the same. He shall also make ratable dividends of the moneys collected by the receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and as the proceeds of the assets of such bank are collected shall make further dividends on all claims proved or adjudicated, and the remainder of the proceeds, if any, shall be paid to the shareholders of such bank, or their legal representatives, in proportion to the stock held by them. That section also provides that whenever any bank against which proceedings have been instituted or for which a receiver has been appointed on account of alleged impairment of its capital stock that cannot be made good by proceedings by the Auditor without a receiver, or in case of the fraudulent or unsafe manner in which the bank is conducted, denies such grounds, the bank may, at any time within ten days, apply to the circuit court of Sangamon county to enjoin such proceedings, and such court, after proper citation on the Auditor to show cause why he so proceeds, and after the decision of the court or finding of a jury that such grounds do not exist for appointing a receiver, shall make an order enjoining the Auditor, and any receiver acting under his direction, from further proceedings on such alleged grounds. Said section also contains the following provision: "No

bill shall be filed or proceedings commenced in any court for the dissolution or for the winding up of the affairs or for the appointment of a receiver for any such banking corporation on the grounds of insolvency or impairment of the capital stock of such banking corporation, or upon the ground that such bank is being conducted in an illegal, fraudulent or unsafe manner, except in the name and by the authority of the Auditor of Public Accounts, represented by the Attorney General."

It is clear from the provisions of section 11 that when a receiver is appointed by the Auditor, or by the court on a bill filed by the Auditor, in contemplation of the statute there must exist sufficient legal grounds for the dissolution of the corporation and the appointment of a receiver for the winding up and complete settlement of its affairs. It is a general and well recognized rule that it is no part of the general jurisdiction of courts, either of law or equity, independently of statute, to dissolve corporations at the instance of an individual or individuals. (*Hunt* v. *LeGrand Roller Skating Rink Co.* 143 Ill. 118; *Wheeler* v. *Pullman Iron and Steel Co.* id. 197; *Coquard* v. *National Linseed Oil Co.* 171 id. 480; *People* v. *Weigley,* 155 id. 491; *Chicago Steel Works* v. *Illinois Steel Co.* 153 id. 9; *Abbott* v. *Loving,* 303 id. 154; *Blanchard Bro. & Lane* v. *Gay Co.* 289 id. 413; 8 Fletcher Cyc. Corp. sec. 5541.) Where the ultimate relief sought by a bill is the dissolution and winding up of the affairs of a corporation, the court has not, in the absence of statutory authority, jurisdiction to appoint a receiver for the corporation. (*People* v. *Weigley, supra; Blanchard Bro. & Lane* v. *Gay Co. supra.*) In *Hunt* v. *LeGrand Roller Skating Rink Co. supra,* this court held that under the common law a corporation cannot be dissolved at the instance of an individual, and that the State, or the Attorney General as the representative of the State, is a necessary party to any suit to dissolve a corporation for a forfeiture of its charter, but that it is entirely competent

for the legislative power to provide by statute for the absolute and final dissolution of a corporation at the suit of an individual, although it is no part of the usual or general jurisdiction of either a court of law or a court of chancery.

It was held in *Blanchard Bro. & Lane v. Gay Co. supra,* that the appointment of a receiver to take possession of the assets of a corporation and to distribute them is tantamount to dissolving the corporation by a decree in equity; that when the property of a corporation is all sold and distributed and its officers are powerless to obtain further means to carry on its business it is powerless to exercise its corporate franchise and is then for all practical purposes dissolved. It is apparent from the foregoing decisions that section 11 contains the only authority in this State for the appointment of a receiver, at the instance of an individual, for the purpose of winding up the affairs of a corporation and for its dissolution, if that section is valid.

The errors assigned by appellant that are pertinent to this appeal are: (1) The court erred in setting aside its order allowing appellant to file his amended and supplemental cross-bill; (2) it erred in refusing him leave to file such cross-bill; and (3) it erred in striking from the files such cross-bill.

The principal contention of appellant in support of his assignment of errors is, that the statute authorizing the Auditor to appoint a receiver for the purposes aforesaid is unconstitutional. So far as this record shows, no order whatever has been entered in this case except the orders concerning the answer and cross-bill of appellant which have already been recited. No decree or order whatever has been entered by the court on the original bill and answer. An order dismissing a cross-bill in a suit in chancery is interlocutory. There is no interlocutory order entered by the court appointing a receiver or confirming the appointment of one by the Auditor. There is therefore no order or decree in the case that is reviewable by either the

Appellate Court or this court. This court has frequently held that neither a writ of error nor an appeal will lie from a decree dismissing a cross-bill until the whole case is disposed of. *Fleece* v. *Russell,* 13 Ill. 31; *McMahon* v. *Quinn,* 140 id. 199; *Village of Harlem* v. *Suburban Railroad Co.* 202 id. 301.

The appeal is dismissed. *Appeal dismissed.*