## JOSEPH ISAAC WINKLES *v.* STATE OF MARYLAND

[No. 244, September Term, 1978.]

*Decided November 3, 1978.*

---

3. Maryland Rule 1071 a; Maryland Rule B12.

The cause was argued before GILBERT, C. J., and DAVIDSON and WILNER, JJ.

*Donald F. Chiarello,* with whom were *Levin, Hochberg & Chiarello* on the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General, Charles E. Wehland, State's Attorney for Howard County,* and *Joseph Fleischmann, Assistant State's Attorney for Howard County,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

Appellant was convicted by a jury in the Circuit Court for Howard County of possession of marijuana in sufficient quantity reasonably to indicate an intent to manufacture and distribute the same, for which he was sentenced to three years' imprisonment. All but 179 days of this sentence was suspended. He raises three issues in this appeal:

1. Did the lower court err in denying appellant's motion to quash after both the State and appellant proved the existence of a plea bargain agreement and substantial proof that the State breached its side of that agreement?

2. Did the lower court err in allowing certain testimony to be heard by the jury which consequently infringed upon the power of the jury to form its own conclusions in regard to the question of intent?

3. Did the lower court err in denying Winkles' motion for judgment of acquittal based upon the sufficiency of the evidence? [1]

---

[1]. At oral argument, appellant withdrew this third issue. Because, after the denial of his motion for judgment of acquittal, appellant presented a defense by calling his father as a witness, he is deemed to have withdrawn his motion, and thus not preserved the court's denial of it for appellate review. Maryland Rule 756 a; *Barnes v. State,* 31 Md. App. 25 (1976).

### (1) *Alleged Bargain Between Appellant and Corporal Hajek*

On the morning of trial, appellant made an oral motion to quash the proceedings against him based upon an asserted agreement between him and a Howard County police officer, Corporal Paul Hajek. Testimony elicited at the hearing on the motion indeed established the fact that, at or about the time that appellant surrendered himself in lieu of arrest, he and Corporal Hajek, whom he knew from high school, did reach an understanding of some sort. Their respective perceptions of what this understanding was varied, however, in at least one significant respect.

Appellant stated that Hajek told him that the State did not wish to prosecute him, and that "in exchange for help, information, they would go no further with the proceedings." Appellant said he understood this to mean that "if I turned in fellow men that I would not be prosecuted by the State." Moreover, according to appellant, Hajek told him that there was no need for him to have an attorney, since if he cooperated, the matter would never get to court. Upon this understanding, appellant directed Hajek's attention to a nearby apartment where the occupant was allegedly growing, packaging, and selling marijuana. In addition, appellant gave Hajek the name of Michael Onheiser, together with information about this person's involvement in the trafficking of drugs. Thus, he claimed, he fulfilled his part of the bargain, and the State should be held to the commitment made by the police officer.

Hajek's story was different. He described the agreement this way:

> "There was no promise. There was an agreement that if Mr. Winkles provided me with information that resulted in the arrest of a person as significant or more significant than he was, that I would go to the State's Attorney and try to have the charges nol prossed. In any event, any cooperation he gave I would testify to in open court."

With respect to employment of an attorney, Hajek stated that he told appellant that "if he saw fit not to retain an attorney and we reached some suitable agreement as to arresting other offenders, there would be no need to retain an attorney for the purposes of court, because I was sure the State's Attorney would agree to a nol pros." According to Hajek, appellant never supplied sufficient information that could lead to the arrest of a significant drug violator, and, for that reason, the understanding never became an actual agreement. Based upon the information supplied with respect to the apartment, Hajek secured and executed a search warrant; but, according to him, the evidence obtained was insufficient to support a conviction and the charges laid against the occupant were nol prossed.[2] As to Michael Onheiser, Hajek claimed that he was unable to corroborate the information supplied by appellant, and that appellant's reliability as an informant had not been sufficiently established to permit him to proceed without such corroboration.

After hearing all of this, the court denied the motion upon the basis of *Bowie v. State,* 14 Md. App. 567 (1972). We believe this disposition was correct. Initially, it is evident that if Corporal Hajek's version of the understanding is believed, there is no *factual* basis for appellant's motion; for, according to that version, in its most favorable light to appellant, he never satisfied the condition upon which Hajek's commitment was premised. Even if appellant's version, much of which was corroborated by his mother, is accepted, the court's ruling was accurate as a matter of law.

Appellant views this "agreement" with a police officer as being in the nature of a plea bargain, and thus seeks to apply to it the concepts and requirements that have developed with respect to that type of arrangement. *See Santobello v. New York,* 404 U. S. 257 (1971); *Miller v. State,* 272 Md. 249 (1974). Under this theory, appellant claims a judicially enforceable

---

2. There was some evidence that the occupant worked for the State Police as a drug analyst. Whether that was true, or had anything to do with what was found in the apartment or the decision not to prosecute is unclear from the record.

agreement with the State, the enforcement of which requires dismissal of the charge. The State, on the other hand, considers the arrangement to be, at best, a promised grant of immunity, which Corporal Hajek had no authority to give. It relies, as did the court below, on what we said in *Bowie v. State, supra,* citing as well *Hunter v. United States,* 405 F. 2d 1187 (9th Cir., 1969); *Application of Parham,* 431 P. 2d 86 (Ariz., 1967); *State v. Crow,* 367 S.W.2d 601 (Mo., 1963).

We see the alleged agreement — accepting *arguendo* appellant's version of it — as neither a plea bargain nor a promised grant of immunity. At the time the "agreement" was made, an arrest warrant had already been issued against appellant charging him with the various drug law violations. What was promised — in his own words — was that these charges would not be prosecuted — that the case would go no farther. This was not a concession for a plea of guilty (*see Gray v. State,* 38 Md. App. 343 (1977)) nor an immunization against criminal responsibility, either testimonial or transactional; although it is more like the latter than the former.

*Bowie* involved an alleged offer of immunity by the State's Attorney which, we said, he had no authority to make.[3] In this instance, the State's Attorney was clearly authorized to proceed or not to proceed with the prosecution; *i.e.,* to carry out or not to carry out the promise allegedly made to appellant. That, indeed, is what simultaneously distinguishes this case from *Bowie* and provides a separate, though somewhat related, basis for denying appellant's motion to quash. That promise could *only* be made by the State's Attorney. The discretion as to whether to prosecute is *solely* in the State's Attorney, and only that official (or his authorized assistants, in his name) could validly exercise that discretion in the manner necessary to make valid the alleged agreement. Certainly, a police officer has neither the power himself to make such a promise, nor to bind the State's

---

**3.** *Compare* United States v. Carter, 454 F. 2d 426 (4th Cir., 1972), involving a promise of "non-prosecution" allegedly made by a United States Attorney; *also* United States v. Paiva, 294 F. Supp. 742 (D.D.C., 1969).

Attorney to it. To conclude otherwise would not only risk the serious possibility of corruption, abuse, and substantial mischief and uncertainty in the prosecution of criminal cases, but would infringe upon the discretion constitutionally committed to the State's Attorney. *See Brack v. Wells,* 184 Md. 86 (1944); *Murphy v. Yates,* 276 Md. 475 (1975).

For that reason, the "agreement" with Corporal Hajek — whatever it was — would not require dismissal of the charges against appellant.

### (2) *Hajek's Expert Opinion*

Corporal Hajek, recalled to the stand at the trial proper — after disposition of appellant's motion to quash — was qualified as an expert in the enforcement of the controlled dangerous substance laws. His experience and training in the identification of narcotic drugs and their properties and in the detection, investigation, and apprehension of suspected drug law violators, were extensive. Hajek led a team of officers in conducting the search of appellant's home pursuant to a search warrant previously issued; and, as part of his testimony, he described and identified the various items taken from appellant's home in execution of the warrant.

In appellant's master bedroom was a safe; and in a drawer in that safe Hajek found $60 in cash and two packets, each containing approximately one ounce of marijuana. The money, Hajek said, was immediately in front of the marijuana in the same drawer. Also found in the house, but not in that drawer, were other narcotic substances and paraphernalia including some 70 or more viable marijuana seeds. Hajek was asked, "what, if any, indication do you draw from the way the money was found in the safe?" Appellant objected to the question with the observation (by counsel), "I don't know if there's any inference to be drawn from that." The State's theory was that the witness, as an expert in the enforcement of the drug laws, could give an opinion as to what, if any, significance might be attached to his having found the money and the marijuana in the same drawer. After some bantering, counsel noted that "[T]he only inference to be gained from

it is the fact that the sixty dollars was worth perhaps as much as the — as the baggies of marijuana, and that's why it was being kept in the safe." The court thereupon observed that counsel was then presuming to be the expert, and finally ruled, "I will allow Corporal Hajek to give what he considers to be his opinion, I'm going to let the jury determine how much weight to put on it." The way thus paved, Hajek stated that it was his "considered opinion that the money was in some way involved with drug transactions, that's why it was stored with the drugs."

The general principles of law with respect to expert testimony have recently been summarized by the Court of Appeals in *Radman v. Harold,* 279 Md. 167 (1977). We may start (and end) with the proposition that "the admissibility of expert testimony is a matter largely within the discretion of the trial court and its action will seldom constitute a ground for reversal", notwithstanding that "the trial court's determination is reviewable on appeal ... and may be reversed if it is founded on an error of law or some serious mistake, or if the trial court clearly abused its discretion." Within this pragmatic framework, the substantive evidentiary rule is that:

> "[A] witness, in order to qualify as an expert, should have such special knowledge of the subject on which he is to testify that he can give the jury assistance in solving a problem for which their equipment of average knowledge is inadequate. It is sufficient if the court is satisfied that the expert has in some way gained such experience in the matter as would entitle his evidence to credit."

Appellant argues that Corporal Hajek was no more qualified to draw an inference from the facts at hand than anyone else, notwithstanding his expertise as a drug enforcement officer. Whether this is so — whether or not the proximity of $60 in cash to two one-ounce packets of marijuana, both located in the drawer of a safe, has some special significance to such an expert that may not be apparent to a layman — is not, it seems to us, a question that

may be answered as a matter of law either way. Perhaps there is some significance to it that is discernible only as the result of special training or experience; perhaps not. It was a matter of discretion. The jury having heard appellant's objection and the colloquy that followed, could draw its own conclusion as to what, if any, weight to give to Hajek's comment. We do not believe the court clearly abused its discretion or committed an error of law or serious mistake.

*Judgment affirmed; appellant to pay the costs.*