## DONALD A. GRANT ET AL. *v.* ALLIED DEVELOPERS, INC. ET AL.

[No. 514, September Term, 1979.]

*Decided January 11, 1980.*

The cause was argued before GILBERT, C. J., and MOYLAN and WILNER, JJ.

*Ronald S. Goldberg,* with whom were *Everngam, Goldstein, Blitz, Rosenberg & Shapiro, P.A.* on the brief, for appellants.

*Donald Cefaratti,* with whom were *James Robert Miller* and *Miller, Miller & Steinberg* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

We are here presented with a question of the power of the

equity court to appoint a receiver, upon the application of a dissident shareholder, for an ostensibly solvent corporation. Donald A. Grant, the appellant and a stockholder [1] in Allied Developers, Inc. (Allied), is of the mind that Jesse Bloodsworth and Carl A. Phillipps,[2] the appellees, along with Allied, have endeavored to defraud him. Grant sought relief in the Circuit Court for Montgomery County, sitting as a court of equity. He requested that a receiver be appointed for Allied and an accounting be undertaken. That tribunal treated a motion to dismiss, made by the appellees, as a motion for summary judgment. It denied Grant's prayer that a receiver *pendente lite* be appointed, but, inasmuch as the appellees conceded that the accounting was appropriate, the chancellor ordered an auditor to review the corporate records.

Pursuant to Md. Rule 605 a the trial court determined that there was no just reason for delaying the entry of final judgment on his denial of the receivership. Judgment was entered, and the appellant noted this appeal.

Grant raises three questions for our consideration, *scilicet*:

> "I. Should the Circuit Court have granted defendants' motion for Summary Judgment and denied appellant the appointment of a receiver, in light of circumstances indicating illegality, fraud, oppression, mismanagement, misapplication of assets, and the existence of a deadlock?
>
> II. Does the Circuit Court have the jurisdiction and authority to appoint a receiver of a Maryland corporation owning real property in North Carolina?
>
> III. Was the granting of a Summary Judgment in this case proper where genuine disputes about material facts existed and defendants were not entitled to judgment as a matter of law?"

---

1. Grant asserts that he owns 50% of the voting stock of Allied. The appellees dispute that figure and claim that Grant owns only 33-1/3%.

2. The name "Philli*pps*" is spelled as "Philli*ps*" in numerous pleadings, but the signature on the Articles of Incorporation of Allied Developers, Inc., indicates the spelling as "Philli*pps*."

The posture of the matter requires that we discuss only the second issue. Our recitation of the factual predicate will, thus, be limited.

## — THE FACTS —

On November 18, 1971, Grant, Bloodsworth, and Phillipps organized Allied for the purpose of dealing in real estate. At that time each individual contributed $500 in capital and received 500 shares of stock. Phillipps, who was to oversee the day-to-day operations of the venture, became the president, and Grant and Bloodsworth held the other corporate offices. Each stockholder sat as a director on a three-man board.

Allied almost immediately borrowed additional funds from Phillipps' wife and from one Helen Brown, a client of Phillipps. Those funds, along with others, were used to purchase the assets of the corporation, which consist of two motels and two checking accounts, all located in the State of North Carolina.

Apparently disenchanted as the result of what he perceived to be a number of improprieties, Grant filed a bill of complaint against the appellees on August 15, 1978.[3] The bill sought four specific and one general form of relief, namely: (1) an injunction to restrain the corporation from holding an annual meeting on August 17, 1978; (2) the appointment of the receiver; (3) an accounting; (4) costs and attorney's fees; and (5) general relief. Five weeks later Grant filed an amended bill containing essentially the same allegations and requesting the identical relief. The appellees, on January 9, 1979, moved to dismiss the bill. As we have already stated, the circuit court treated the motion to dismiss as a motion for summary judgment.[4] By order dated April 4, 1979, the motion for summary judgment in favor of Allied was granted as to the appointment of a receiver.

---

**3.** Grant alleged that Phillipps' transgressions included personal use of corporate funds, improperly countersigning Grant's name to corporate checks, failure to file various tax returns, and, we infer, a "squeeze play" so as to eliminate Grant totally from the corporation. Grant also averred that Bloodsworth abetted Phillipps' attempt to eliminate him.

**4.** Patently, the issuance of an injunction on April 4, 1979, to prevent the August 17, 1978, meeting would have been absurd.

— THE LAW —

We said, in *Di Grazia v. County Executive,* 43 Md. App. 580, 406 A.2d 660, 662-63 (1979), that:

"The standards for ruling upon a motion for summary judgment have been the subject of numerous opinions of both this Court and the Court of Appeals. Md. Rule 610 a 1 provides that a 'party ... may at any time make a motion for summary judgment ... on the ground that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law.' The trial judge is to render judgment only if 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.' Md. Rule 610 d 1.

Summary judgment is not a substitute for a trial but only a procedure to determine whether a trial is necessary. *Kirsner v. Fleischman,* 261 Md. 164, 169, 274 A.2d 339, 342 (1971); *Mazur v. Scavone,* 37 Md. App. 695, 698-99, 378 A.2d 1355, 1357 (1977). When ruling on such a motion, the trial judge does not decide disputed facts but, rather, decides whether any real dispute exists as to *material* facts. *Washington Homes, Inc. v. Interstate Land Development Co., Inc.,* 281 Md. 712, 716, 382 A.2d 555, 557 (1978); *Lipscomb v. Hess,* 255 Md. 109, 118, 257 A.2d 178, 183 (1969); *Vanhook v. Merchants Mutual Insurance Co.,* 22 Md. App. 22, 25, 321 A.2d 540, 542 (1974). All duly shown facts which would be admissible at trial, and all reasonable inferences deducible therefrom, must be considered in a light most favorable to the party opposing the motion and against the party making the motion. *Washington Homes v. Interstate Land Development Co., Inc.,* 281 Md. at 718, 382 A.2d at 557-58; *Rooney v. Statewide Plumbing,* 265 Md. 559, 563-64, 290 A.2d 496, 499

(1972); *Mazur v. Scavone,* 37 Md. App. at 704, 378 A.2d at 1359. The function of the trial judge in deciding motions for summary judgment is much the same as that he performs at the close of all the evidence in a jury trial when passing upon motions for directed verdict or requests for peremptory instructions. *Porter v. General Boiler Casing Co.,* 284 Md. 402, 413, 396 A.2d 1090, 1096 (1979); *Washington Homes v. Interstate Land Development Co., Inc.,* 281 Md. at 711, 382 A.2d at 557."

It is elementary, under *Di Grazia* and the cases cited therein, that we may affirm the ruling of the circuit court only if the appointment of a receiver was precluded as a matter of law.

The circuit court concluded that the material facts of the alleged improprieties were in dispute, and that he "would not on that element conclude that a summary judgment should be granted. . . ." The court opined:

"[T]he authority given to me with respect to the appointment of receivers and where the property is extraterritorial is equally persuasive that were I to find grounds for the appointment of a receiver in this case — there seems to be no dispute of the facts — that leaves the conclusion inescapable that the receiver would have no power to act, that the act of appointing a receiver for this corporation by this Court would be a nullity. There is nothing for him or her to administer and take control of, and it seems equally clear when I examine the authority — Holbrook v. Central Tractor and Equipment Company, 168 Md. at 468 — that the receiver appointed here would not have the privilege of suing in another jurisdiction and has to be administered not here. *And the Court has no jurisdiction for that reason.*" (Emphasis supplied.)

We have a different view.

As early as *Blondheim v. Moore,* 11 Md. 365 (1857), it was recognized as a well-settled proposition in this State that a

court of equity possesses the inherent power to appoint a receiver to take charge of and protect the property of a defendant pending an adjudication of the rights of the parties before the chancellor.[5] *See also, Brown v. Brown,* 204 Md. 197, 211, 103 A.2d 856, 863 (1954); *Williams v. Salisbury Ice Co.,* 176 Md. 13, 27, 3 A.2d 507, 514 (1939); *Hagerstown Furniture Co. v. Baker,* 155 Md. 549, 558, 142 A. 885, 889 (1928); *Shannon v. Wright,* 60 Md. 520, 523 (1883); *Voshell v. Hynson,* 26 Md. 83, 92-93 (1866). The appointment of a receiver is "to be exercised with great circumspection," *Blondheim v. Moore, supra,* 11 Md. at 374, and unless the necessity for such an appointment "be of the most stringent character, the court will not appoint until the defendant is first heard in response" to the complaint. *Id.*

Upon proper application and proof, equity may exercise the appointment power so as to preserve the assets of a solvent corporation, where the actions of directors, officers, or other shareholders are *ultra vires,* fraudulent, or otherwise illegal. *Williams v. Salisbury Ice Co., supra; Hagerstown Furniture Co. v. Baker, supra.*

A chancery receiver [6] " 'has no extra territorial power of official action: none which the court appointing him can confer, with authority * * * to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court or another jurisdiction.' " *Holbrook v. Industrial Tractor and Equipment Co.,* 168 Md. 468, 471, 178 A. 236, 237 (1935), *quoting Booth v. Clark,* 58 U.S. (17 How.) 322, 338, 15 L.Ed. 164, 170-71 (1855). *See also Day v. Postal Telegraph Co.,* 66 Md. 354, 360, 7 A. 608, 610 (1887); *Lycoming Fire Insurance Co. v. Langley,* 62 Md. 196, 202 (1884); High, *A Treatise on the Law of Receivers,* § 47 (4th ed. 1910).

---

5. According to 3 Clark, *A Treatise On The Law and Practice of Receivers* § 700b (3rd ed. 1959), a number of decisions "flatly hold that a court of equity" does not have the "inherent authority to appoint a receiver of a corporation or the assets of a corporation." *See, e.g.,* Smith-Dimmick Lbr. Co. v. Teague, Barnett & Co., 119 Ala. 385, 24 So. 4 (1898); Scott v. Hollingsworth, 215 Cal. 314, 9 P.2d 836 (1932); Nelson v. Toluca State Bank, 334 Ill. 83, 165 N.E. 191 (1929); Vila v. Grand Island, etc. Co., 68 Neb. 222, 94 N.W. 136, 97 N.W. 613 (1903).

6. A receiver appointed by the court of equity in the exercise of its inherent power is called a "chancery receiver" to distinguish the position from a receivership authorized by statute. 1 Clark, *supra,* § 15.

Notwithstanding the lack of extra territorial power of the chancery receiver, "[i]t would seem to be unnecessary that the property constituting the subject-matter of litigation should be within the jurisdiction of the court, . . . [if] the parties in interest are subject to its control. . . ." *Id.* § 44.

Restatement (Second) of Conflicts of Laws § 367 (1971) is in accord:

> "[A] principal receiver will customarily be appointed,
>> (a) in the case of an action instituted by a creditor or shareholder of a corporation, by a competent court of the state of incorporation. . . ."

*See also,* Goodrich, *Handbook of the Conflict of Laws* § 202 (3rd ed. 1949).

In the instant case, Maryland is the State of incorporation and all the parties are subject to personal jurisdiction by the Maryland court. It is the physical assets of Allied that are *dehors* the territorial confines of Maryland. Consequently, the circuit court had jurisdiction to appoint a receiver. To conclude, as it did, as a matter of law, that it had no such jurisdiction constitutes reversible error.

The appellees' motion to dismiss should not have been converted judicially into a motion for summary judgment. The motion to dismiss was the proper motion to file. Whether it is granted is another question. Such a motion is addressed to the sound discretion of the court.

Where the assets of the defendant corporation are located outside the boundaries of the domiciliary State, it may become necessary to have an ancillary receiver appointed by the courts of the foreign jurisdiction where the property is located, 1 Clark, *supra,* § 18, in which event, additional expense to the estate, or duplicitous efforts could result. Those possibilities, however, go merely to the advisability, and not the legality, of appointing a Maryland receiver.[7]

---

7. The power to appoint a receiver for a corporation is "a discretionary power, 'to be exercised with great circumspection, and only in cases where there is fraud or spoliation, or imminent danger of the loss of the property,

Because the circuit court was not precluded as a matter of law from appointing a receiver for Allied, we shall reverse and remand this case for further proceedings.

In so doing, we are not to be construed as having reached a decision on the merits of this case, nor are we to be interpreted to have said that the chancellor, in reaching his decision, is prohibited from considering the fact that the assets of the corporation are in North Carolina. On the other hand, we are not to be taken as meaning the chancellor may not appoint a receiver. Whether the circuit court ultimately appoints a Maryland receiver is for it to decide in the exercise of its sound discretion.

> *Judgment reversed and case remanded for further proceedings.
> Costs to be paid by the appellees.*

---

if the immediate possession should not be taken by the court; and these facts must be clearly proved.' " Hagerstown Furniture Co. v. Baker, *supra,* 155 Md. at 558, 142 A. at 889.