879 A.2d 1097

**Kareem WYNN**

v.

**STATE of Maryland.**

**No. 115, Sept. Term, 2004.**

Court of Appeals of Maryland.

Aug. 11, 2005.

Stephen B. Mercer (Rene Sandler, Sandler & Mercer, P.C., Rockville; William G. McLain, Washington, DC), on brief for Petitioner.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore), on brief for Respondent.

Argued Before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, Judge.

In this case, we must decide whether a trial court, following a mistrial, may dismiss an indictment in a criminal case in response to the State's violation of a pre-trial scheduling

order.  The Court of Special Appeals held that the Circuit Court for Montgomery County erred in granting Wynn's motion to dismiss the indictment with prejudice.  We agree and affirm.

## I.

Around midnight on July 2, 2002, traffic was stalled on Interstate 270 in Montgomery County as construction compelled drivers to merge from three lanes into one.  This case concerns two drivers from amongst the many who navigated the lane convergence that night.  William Humphrey, accompanied by his six month old daughter, drove in the middle lane, and Kareem Wynn, accompanied by his wife, drove in the right lane.  As Humphrey attempted to merge into the right lane, Wynn blocked his path.  Humphrey opened his passenger window and questioned Wynn about his driving.  Wynn passed Humphrey.  Humphrey then approached Wynn and again expressed concern about his fellow driver's actions.

It is at this point that Humphrey's and Wynn's stories diverge.  Wynn claims that he could not understand Humphrey's comments, closed his window, and waved to encourage Humphrey to pass.  Humphrey claims that Wynn pointed a semi-automatic pistol at him.

Humphrey called 911 and reported his version of the events.  Soon after, State Police officers stopped Wynn's car.  Wynn acknowledged that he had a gun in his car, which he had a permit to carry in Pennsylvania.  He denied, however, that he had removed the gun from the car's center console that night, or even in the previous five months.

Wynn was charged with first degree assault, use of a handgun in the commission of a felony or a crime of violence, and transporting a handgun in a vehicle.[1]  Wynn was tried

---

1.  At the time of Wynn's arrest, the crime of first degree assault was proscribed by Md.Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Art. 27 § 12A-1, and the crimes of use of a handgun in the commission of a felony or a crime of violence and transporting a handgun in a vehicle

before a jury in the Circuit Court for Montgomery County. The jury found Wynn guilty of transporting a handgun in a vehicle. The jury deadlocked, and the court declared a mistrial on the other two charges. Regarding those two charges, the court stated as follows:

"Madam State, the Court will grant leave to the State 30 days to decide whether or not to proceed further in this matter. All right. On the determination as to counts one and two, then the Court will either defer on sentence if there is to be a further proceeding or to impose sentence if there is not to be a further proceeding as to count number three. All right.

"So from today, you have 30 days to elect and you do in writing in the form of indicating to counsel and to the Assignment Office if there needs to be a new trial set. It could go before any judge. It doesn't have to come back before me. All right."

Forty-five days later, the court held a status conference, and Wynn moved to dismiss the outstanding charges. The following colloquy ensued:

"[PROSECUTOR]: Thank you. It is not a matter of recharging the case obviously. The charges are still out there and this is the first opportunity to get a trial date in the case. This is the first date set by the Assignment Office for all parties to come in and pick a date. That is the purpose of the status conference. The date chosen by the Assignment Office is not an inordinate time, amount of time from the time the mistrial was declared.

"THE COURT: Well let me ask this question. Did you file a request by Line that the matter be reset?

"[PROSECUTOR]: I talked with the Assignment Office. They called me about a week after the mistrial was declared and asked if they could go ahead and schedule a status

---

were both set out by Md.Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Art. 27 § 36B. Subsequently, the Legislature repealed and reenacted both provisions as Md.Code (2002), §§ 3–202, 4–204, and 4–203 of the Criminal Law Article. *See* 2002 Md. Laws, Chap. 26, § 1.

conference date and I said schedule a status conference date.

"THE COURT: Well, that is not requesting to proceed as to counts one or two or both.

"[PROSECUTOR]: I assumed that by setting a status conference date we would come in and we would set a date to retry these two counts. Frankly, one of the reasons the State has been waiting is that the main officer in this case is a member of the Maryland National Guard and it has been unclear as to whether he was going to be called in to serve. He's in Iraq. I have been waiting to kind of find out what his status is. I talked to him again yesterday and he is still available. This is the first time this has been set in for a date and I am ready to pick—

"THE COURT: Well, I know it is the first time it is set in but all he had to do was file a Line that said the State elects to proceed forward on the trial in counts one and two or count one or count two. The problem is that no notice was given.

"[PROSECUTOR]: I assumed that this would be sufficient to come into court today and pick a date.

\* \* \*

"THE COURT: ... the indication that I have is that this trial was held on the 11th. The mistrial was declared on the 11th as to counts one and two. Notices were sent out to all parties according to the Court file on February 14th notifying of a status conference regarding counts one and two on this date.

"The Court notes also that the docket entry granted leave to the State for 30 days to determine whether they intended to proceed on counts one and two and/or I should say count one and/or two.

"The file contains nothing else and I have received nothing else. Anything that you can enlighten me on?

"[PROSECUTOR]: Your Honor, I didn't file a Line.

"THE COURT: Okay. All right. I think that omission is fatal frankly, and accordingly, counts one and two will stand as dismissed with prejudice."

The State noted a timely appeal to the Court of Special Appeals. In an unreported opinion, the court reversed, holding that the Circuit Court did not have the authority to dismiss the charges against Wynn.

We granted Wynn's Petition for a Writ of Certiorari. 384 Md. 449, 863 A.2d 997 (2004). Wynn raises the following issue before this Court:

"Whether a trial judge has the inherent power to dismiss an indictment or other charging document for the State's violation of a scheduling order entered following a mistrial and without objection by the State, absent a violation of the constitutional guarantee of a speedy trial or a violation of the 180–day rule contained in Maryland Rule 4–271 (the *Hicks* Rule)?"

## II.

Wynn argues that a trial court has an implied power to dismiss criminal cases as a remedy for the State's violation of a scheduling order. Wynn describes this asserted power as a "necessary corollary" of the court's inherent authority to control its own docket. Without the power to dismiss, Wynn contends, a trial court would have no recourse when the State violates its scheduling order and, thus, could not enforce its role of administering justice. Wynn continues that the decision of the Circuit Court was a proper employment of its discretion. He claims that the prosecutor's delay caused him severe anxiety and distress, because he did not know whether he would face a new trial, potential convictions, and imprisonment.

The State responds that a trial court does not possess inherent authority to dismiss a criminal case for the violation of a scheduling order. A trial court's ability to control its docket by holding a prosecutor to a scheduling order does not lead to the conclusion that a court may dismiss charges when

the State does not comply with a scheduling order. In the alternative, the State argues that even if a trial court has inherent authority to dismiss a case to control its docket, the court may not dismiss the case with prejudice. Finally, the State argues that even if a trial court has the power to dismiss a case with prejudice for violating a scheduling order, the Circuit Court abused its discretion in this case. The State asserts that given the short interval between the mistrial and status conference and the prosecutor's apparent good intentions, the Circuit Court acted to teach the State a lesson—an inappropriate reason for dismissing the State's charges.

## III.

■ This case concerns the scope of the inherent power of the trial court to control its docket. Wynn argues that the inherent authority of the trial court to control its docket implies the power to dismiss criminal prosecutions for scheduling order violations. We disagree. Inherent authority should be applied only when necessary to the performance of the judicial function. The interest of the trial court in enforcing its scheduling order through the invocation of the ultimate remedy of dismissal does not support such a severe constraint on the broad discretion of the State, representing the interests of society, to prosecute cases. Accordingly, we hold that the Circuit Court had no power to remedy the State's scheduling order violation by dismissing the indictment.

■ The State had discretion to retry Wynn on the surviving charges after the jury deadlocked and the court declared a mistrial. It is well-established that, ordinarily, "when a mistrial has been declared as the result of a manifest necessity or with the consent of the defendant, retrial of the same charge is not prohibited by the Double Jeopardy Clause." *State v. Griffiths,* 338 Md. 485, 490, 659 A.2d 876, 879 (1995); *see, e.g., Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982); *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824); *Wooten–Bey v. State,* 308 Md. 534, 542–43, 520 A.2d 1090, 1094 (1987). *See generally* Shel-

don R. Shapiro, Annotation, *Double Jeopardy as Bar to Retrial After Grant of Defendant's Motion for Mistrial*, 98 A.L.R.3d 997 (1980).

Wynn relies solely on the inherent authority of the court as authority to support the action of the trial court. While court rules or statutes permit federal courts and a number of state courts generally to dismiss criminal charges, Maryland has no rule or statute of comparable breadth.

Under the federal rules, a court may dismiss charges for "unnecessary delay." Federal Rule of Criminal Procedure 48(b) provides as follows:

**"By the Court.** The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:

(1) presenting a charge to a grand jury;

(2) filing an information against a defendant; or

(3) bringing a defendant to trial."

Several states have adopted language similar to Fed. R.Crim.P. 48(b), authorizing the trial court to dismiss a prosecution when there is "unnecessary delay." *See, e.g.,* Alaska R.Crim. P. 43(c) (2005); Idaho R.Crim. P. 48(a)(2) (2005); Minn. R.Crim. P. 30.02 (1995, 2005 Cum.Supp.); Vt. R.Crim. P. 48(b) (2003). The parallel provision in Ohio is an even more general rule covering court dismissal over the objection of the State. *See* Ohio Crim. R. Rule. 48(b) (2003).

Other states have enacted statutes or rules authorizing courts *sua sponte* to dismiss criminal charges "in furtherance of justice." *See* Cal.Penal Code § 1385 (2005); Idaho R.Crim. P. 48(a)(2); I.C.A. Rule 2.33 (Iowa 2002, 2005 Cum.Supp.); Minn.Stat. § 631.21 (2003, 2005 Cum.Supp.); Mont.Code Ann. § 46–13–401 (2003); N.Y.Crim. Proc. § 210.40 (1996, 2005 Cum.Supp.); Okla. Stat. tit. 22, § 815 (2003, 2005 Cum.Supp.); Or.Rev.Stat. § 135.755 (2003); Utah R.Crim. P. 25 (2005); Vt. R.Crim. P. 48(b); Wash. R.Crim. P. 8.3(b) (2005).

Instead of a general rule or statute, the Maryland Legislature and this Court have authorized trial courts to dismiss criminal charges in limited circumstances. Most often invoked

is the *Hicks* rule. Md.Code (2001, 2004 Cum.Supp.), § 6–103(a) of the Criminal Procedure Article and Md. Rule 4–271 mandate that the trial date in the circuit court may not be later than 180 days after the earlier of the appearance of counsel or the arraignment of the defendant. *See* § 6–103(a)(2) (providing that "[t]he trial date may not be later than 180 days after the earlier of [the first appearance of counsel or the first appearance of the defendant before the circuit court]"); Md. Rule 4–271(a)(1) (providing that "[t]he date for trial in the circuit court . . . shall be not later than 180 days after the earlier of those events"). In *State v. Hicks*, 285 Md. 310, 403 A.2d 356 (1979), we recognized that § 6–103(a) and Rule 4–271 are mandatory, and we held that, absent a showing of good cause justifying a trial postponement, dismissal of the criminal charges is the appropriate sanction when the State fails to meet the then 120–day requirement. *Id.* at 318, 403 A.2d at 360; *see also Dorsey v. State*, 349 Md. 688, 701, 709 A.2d 1244, 1250 (1998) (discussing the *Hicks* rule).

Wynn does not contend that the State violated *Hicks* or his constitutional right to a speedy trial. He also recognizes that there is no rule or statute authorizing a trial court to dismiss charges based on the State's failure to comply with a scheduling order. Wynn's sole contention is that the trial court has the power, as a "necessary corollary" to the court's inherent authority to control its docket, to dismiss an indictment based on a scheduling order violation.

Since the early years of the Republic, Maryland courts have recognized the inherent authority of courts in numerous contexts.[2] In *Attorney General v. Waldron*, 289 Md. 683, 426

**2.** *See, e.g., Towson University v. Conte*, 384 Md. 68, 95, 862 A.2d 941, 957 (2004); *Archer v. State*, 383 Md. 329, 360, 859 A.2d 210, 229 (2004); *Attorney Grievance v. Roberson*, 373 Md. 328, 345, 818 A.2d 1059, 1069 (2003); *MTA v. King*, 369 Md. 274, 299, 799 A.2d 1246, 1260 (2002); *Post v. Bregman*, 349 Md. 142, 163, 707 A.2d 806, 816 (1998); *Greco v. State*, 347 Md. 423, 427, 701 A.2d 419, 421 (1997); *Maryland Aggregates v. State*, 337 Md. 658, 678, 655 A.2d 886, 896 (1995); *Chertkov v. State*, 335 Md. 161, 170, 642 A.2d 232, 236 (1994); *Safeway Stores, Inc. v. Watson*, 317 Md. 178, 183 n. 4, 562 A.2d 1242, 1245 n. 4 (1989); *O'Donnell v. McGann*, 310 Md. 342, 352, 529 A.2d

A.2d 929 (1981), this Court described the source of inherent authority as follows:

"We have recognized in the past that, in addition to the specific powers and functions expressly granted to the three organs of the government by the Constitution, each branch possesses additional powers perforce implied from the right and obligation to perform its constitutional duties. Indeed, the existence of such powers inheres in the scheme of a written constitution, for without this authority, the document would, by necessity, be but a tome exhaustively cataloging the sole authority of the respective political institutions. Particularly important for the resolution of this case,

372, 377 (1987); *Turrisi v. Sanzaro*, 308 Md. 515, 526, 520 A.2d 1080, 1085 (1987); *Taylor v. Taylor*, 306 Md. 290, 298, 508 A.2d 964, 968 (1986); *Balducci v. Eberly*, 304 Md. 664, 674, 500 A.2d 1042, 1048 (1985); *McAlear v. McAlear*, 298 Md. 320, 328, 469 A.2d 1256, 1260 (1984); *Thomas v. Thomas*, 294 Md. 605, 613, 451 A.2d 1215, 1219 (1982); *Comm'n on Med. Discipline v. Stillman*, 291 Md. 390, 400, 435 A.2d 747, 753 (1981); *Ayre v. State*, 291 Md. 155, 160, 433 A.2d 1150, 1154 (1981); *State Dep't of A. & Tax. v. Clark*, 281 Md. 385, 403, 411, 380 A.2d 28, 38, 42–43 (1977); *Criminal Inj. Comp. Bd. v. Gould*, 273 Md. 486, 501, 331 A.2d 55, 65 (1975); *State v. Roll and Scholl*, 267 Md. 714, 719 n. 4, 298 A.2d 867, 871 n. 4 (1973); *Austin v. Director*, 245 Md. 206, 211, 225 A.2d 466, 469 (1967); *Holland v. Holland*, 224 Md. 449, 452, 168 A.2d 380, 381 (1961); *Wethered, Tr. v. Alban Tractor*, 224 Md. 408, 421, 168 A.2d 358, 365 (1961); *Mahoney v. Sup. of Elections*, 205 Md. 325, 335, 108 A.2d 143, 147 (1954); *Redwood Hotel, Inc. v. Korbien*, 197 Md. 514, 520, 80 A.2d 28, 31 (1951); *North v. Town Real Estate Corp.*, 191 Md. 212, 216, 60 A.2d 665, 667 (1948); *Cook v. Boehl*, 188 Md. 581, 589, 53 A.2d 555, 559 (1947); *Purdum v. Lilly*, 182 Md. 612, 619, 35 A.2d 805, 808 (1944); *Bailey v. Bailey*, 181 Md. 385, 389, 30 A.2d 249, 251 (1943); *Barnard v. Godfrey*, 157 Md. 264, 267, 145 A. 614, 615 (1929); *State v. Vincent*, 91 Md. 718, 726, 47 A. 1036, 1037 (1900); *Dorsey v. Thompson*, 37 Md. 25, 46 (1872); *Hughes v. Jackson*, 12 Md. 450, 456 (1858); *Pegg v. Warford*, 4 Md. 385, 395 (1853); *Boteler and Belt v. Brookes*, 7 G. & J. 143, 154 (1835); *Downes v. Downes*, 158 Md.App. 598, 613, 857 A.2d 1155, 1163 (2004); *Smitley v. State*, 61 Md.App. 477, 481–82, 487 A.2d 315, 317 (1985); *General Motors Corp. v. Miller Buick, Inc.*, 56 Md.App. 374, 389–90, 467 A.2d 1064, 1072 (1983); *Komorous v. Komorous*, 56 Md.App. 326, 332, 467 A.2d 1039, 1042 (1983); *Venables v. Ayres*, 54 Md.App. 520, 530, 459 A.2d 601, 606–07 (1983); *Grant v. Allied Developers, Inc.*, 44 Md.App. 560, 564–65, 409 A.2d 1123, 1125 (1980); *Link v. Link*, 35 Md.App. 684, 686, 371 A.2d 1146, 1148 (1977); *Propst v. State*, 5 Md.App. 36, 41, 245 A.2d 88, 91 (1968).

of course, is what has come to be known as the incidental, implied or inherent power of one branch of government—the judiciary—and its relation to the police power vested, albeit inherently, in the legislative branch. Discussing the power that inheres in the judiciary in a democracy structured as ours, the Supreme Court of Wisconsin, over fifty years ago, lucidly articulated the foundation of such authority:

> " 'In order to accomplish the purposes for which they are created, courts must also possess powers. From time immemorial, certain powers have been conceded to courts, because they are courts. Such powers have been conceded, because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. * * * "The inherent power of the court is the power to protect itself; the power to administer justice . . .; the power to promulgate rules for its practice; and the power to provide process where none exists. It is true that the judicial power of this court was created by the Constitution, but, upon coming into being under the Constitution, this court came into being with inherent powers." (*State v. Cannon*, 196 Wis. 534, 221 N.W. 603, 603–04 (1928) (quoting *In re Bruen*, 102 Wash. 472, 172 P. 1152 (1918).)' "

*Id.* at 690–91, 426 A.2d 929, 933–34 (citations omitted); *see also Commission on Medical Discipline v. Stillman*, 291 Md. 390, 400, 435 A.2d 747, 753 (1981) (articulating the rationale for inherent authority and quoting the same passage from *Cannon* ).

The concept of inherent authority, thus, is grounded in the understanding that courts must possess certain powers in order to function as courts. Similarly, inherent authority is necessary to protect the role of the judiciary within the constitutional separation of powers. Inherent authority provides courts the means both to employ the power and fulfill the functions granted expressly to the judiciary by the Maryland Constitution as well as to resist encroachments by the legislative and executive branches. *See Stillman*, 291 Md. at

400, 435 A.2d at 753 (quoting *Clerk of Court's Comp. for Lyon County v. Lyon County Comm'rs,* 308 Minn. 172, 241 N.W.2d 781, 786 (1976), as stating that inherent judicial power "grows out of express and implied constitutional provisions mandating a separation of powers and a viable judicial branch of government"); Felix F. Stumpf, *Inherent Powers of the Courts: Sword and Shield of the Judiciary* 6–9 (1994) (citing the separation of powers and the "nature of courts" or "structural necessity" as the two primary theoretical bases for inherent judicial powers).

Other state courts have recognized inherent authority as a longstanding source of court power and have articulated similar rationales as has this Court. *See, e.g., State v. Superior Court,* 78 Ariz. 74, 275 P.2d 887, 889 (1954) (stating that "[t]hese powers spring not from legislation but from the nature and constitution of tribunals themselves"); *Rose v. Palm Beach County,* 361 So.2d 135, 137 (Fla.1978) (stating that the inherent authority "doctrine exists because it is crucial to the survival of the judiciary as an independent, functioning and co-equal branch of government"); *Konrad v. Jefferson Parish Council,* 520 So.2d 393, 397 (La.1988) (describing the inherent powers doctrine as "a corollary of the concepts of separation of powers and of judicial independence"); *Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 274 A.2d 193, 197 (1971) (justifying inherent powers as necessary for the judiciary to protect its position as a co-equal branch of government); *State v. Braunsdorf,* 98 Wis.2d 569, 297 N.W.2d 808, 813 (1980) (defining an inherent power as "one without which a court cannot properly function").

The United States Supreme Court has held that federal courts have inherent powers. In 1812, the Court stated that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution" and described these powers as "necessary to the exercise of all others." *United States v. Hudson,* 11 U.S. (7 Cranch.) 32, 34, 3 L.Ed. 259 (holding that "jurisdiction of crimes against the state" is not an "implied" power); *see Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27

(1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962).

Courts across the country, including this Court, have maintained that inherent authority should be recognized and yet employed rarely. By declaring a judicial power "inherent," courts remove the power from control or limitation by the other branches of government. *See, e.g., Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 501, 331 A.2d 55, 65 (1975) (reviewing the "long line of cases" in which this Court "has consistently held that the Legislature cannot divest the courts of the inherent power they possess to review and correct actions by an administrative agency which are arbitrary, illegal, capricious or unreasonable"). As such, courts have deemed the prospect of the expansive application of inherent authority as potentially undemocratic, invasive of the powers of the executive and legislative branches, and detrimental to inter-branch cooperation and harmony. *See Roadway Express,* 447 U.S. at 765, 100 S.Ct. at 2463 (stating that "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion"); *Stillman,* 291 Md. at 400, 435 A.2d at 753 (quoting *Lyon County Comm'rs,* 241 N.W.2d at 786, as stating that the determination of whether to apply inherent authority must give "due consideration for equally important executive and legislative functions"); *Pena v. Dist. Court of Second Judicial Dist.,* 681 P.2d 953, 957 (Col.1984) (en banc) (stating that "the inherent power of courts is not unlimited" because "[t]he public interest requires that the three branches of government work cooperatively and in harmony"); *Rose,* 361 So.2d at 137 (noting that "it is the judiciary that must decide upon the ultimate delineation of power" and concluding that "[t]he courts' zeal in the protection of their prerogatives must not lead them to invade areas of responsibility confided to the other two branches"). Accordingly, courts have held that the test for inherent authority is whether it is "necessary to the performance of the judicial function as contemplated in our

state constitution." *Stillman*, 291 Md. at 400, 435 A.2d at 753 (quoting *Lyon County Comm'rs*, 241 N.W.2d at 786); *see also Pena*, 681 P.2d at 957 (stating that the "need which causes a court to invoke such powers must be reasonably necessary for its proper functioning"); *Rose*, 361 So.2d at 137 (holding that "[t]he doctrine of inherent power should be invoked only in situations of clear necessity").

These concerns are magnified and the need for a narrow application of inherent authority is greater when the power claimed as deriving from inherent authority overlaps and conflicts with a power of the legislative or executive branch. In such situations, application of an inherent power would remove the power from control or limitation by the other branches and would limit the powers possessed by the other branches. The North Carolina Supreme Court has described the proper approach for courts to follow when claimed inherent powers overlap with the powers of another branch of government. In *In re Alamance County Court Facilities*, 329 N.C. 84, 405 S.E.2d 125 (1991), a case concerning the power of the court to demand that county officials provide adequate judicial facilities, the court stated as follows:

"The inherent power of the court must be exercised with as much concern for its potential to usurp the powers of another branch as for the usurpation it is intended to correct. It is a tool to be utilized only where other means to rectify the threat to the judicial branch are unavailable or ineffectual, and its wielding must be no more forceful or invasive than the exigency of the circumstances requires.

\* \* \*

"In exercising its power to do what is reasonably necessary for the proper administration of justice—in remedying the affront—a court must proceed with a cautious and cooperative spirit into those areas where its constitutional powers overlap with those of other branches."

*Id.* at 133. Accordingly, in cases of overlap between an asserted application of an inherent authority and a legislative

or executive branch power, we must weigh carefully the interest of the court and the necessity of exercising the inherent power against the interest of the other branch in the unmitigated exercise of its power.

The inherent authority of a court to control its docket is widely recognized. *See, e.g., Goins v. State,* 293 Md. 97, 111, 442 A.2d 550, 557 (1982); *Ex Parte Osborn,* 375 So.2d 467, 468 (Ala.1979); *People v. Rivera,* 198 Ill.2d 364, 261 Ill.Dec. 336, 763 N.E.2d 306, 314 (2001); *Macomber v. MacQuinn–Tweedie,* 834 A.2d 131, 137 (Me.2003); *Watson v. Lillard,* 493 So.2d 1277, 1278 (Miss.1986); *State v. Honeycutt,* 96 S.W.3d 85, 89 (Mo.2003); *Gonzales v. Surgidev Corp.,* 120 N.M. 151, 899 P.2d 594, 598 (1995); *Boston v. Buchanan,* 89 P.3d 1034, 1044 n. 9 (Ok.2003). The reason for this widespread recognition is clear: courts could not function without the ability to control their dockets. *See* Robert J. Pushaw, Jr., *The Inherent Powers of Federal Courts and the Structural Constitution,* 86 Iowa L.Rev. 735, 854 (2001) (arguing that federal courts could not function without the ability to exercise control over their dockets, such as through setting their calendars, granting continuances, recesses, and stays, and consolidating cases, although arguing that dismissal for failure to prosecute is not an indispensable docket control function).

In civil cases, Maryland courts have held that the inherent authority of a trial court to control its docket empowers the trial court to dismiss the action as a sanction for the violation of a scheduling order by the plaintiff. *See Zdravkovich v. Siegert,* 151 Md.App. 295, 308, 824 A.2d 1051, 1058 (2003) (upholding the circuit court's dismissal of a civil case after the party did not appear for trial, because of the circuit court's "obligation to manage the court's docket and prevent cases from remaining unresolved indefinitely"); *Hossainkhail v. Gebrehiwot,* 143 Md.App. 716, 728, 795 A.2d 816, 823 (2002) (holding that the circuit court had the power to dismiss a civil case for failing to comply with its discovery scheduling order based on its "inherent authority to mange its affairs and achieve an orderly and expeditious disposition of cases"). The power of Maryland courts to dismiss in civil cases is enshrined

in Maryland Rule 2–507(c),[3] which permits the circuit court to dismiss a civil case for lack of prosecution, with certain exceptions, when a year has passed from the last docket entry.

The United States Supreme Court has held that a federal court may dismiss a civil case *sua sponte* pursuant to its inherent authority to control its docket. In *Link v. Wabash R.R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the federal district court *sua sponte* dismissed a long-delayed diversity negligence action after the plaintiff's counsel missed the pretrial conference. The Supreme Court first noted that the court had the power to dismiss the action under Federal Rule of Civil Procedure 41(b), which authorizes the court, upon motion by the defendant, to dismiss a claim "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court." *Id.* at 629–30, 82 S.Ct. at 1388. The Court next rejected plaintiff's contention that the court had no power to dismiss *sua sponte*, because the Rule referred only to dismissal in response to defendant's motion. The Court responded that the Rule could not be interpreted to abrogate the inherent authority of the court to dismiss, based on the "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 630–31, 82 S.Ct. at 1389.

The power of courts to dismiss civil cases based on their inherent authority to control their dockets has been recognized widely by state courts as well. *See, e.g., Watson v. Lillard,* 493 So.2d 1277, 1278 (Miss.1986) (holding that "[t]he power to dismiss for failure to prosecute is inherent in any court of law or equity, being a means necessary to the orderly

---

**3.** Md. Rule 2–507 governs dismissal in civil cases for lack of jurisdiction or prosecution. Section (c) provides as follows:

"**For lack of prosecution.** An action is subject to dismissal for lack of prosecution at the expiration of one year from the last docket entry, other than an entry made under this Rule, Rule 2–131 ["Appearance"], or Rule 2–132 ["Striking of attorney's appearance"], except that an action for limited divorce or for permanent alimony is subject to dismissal under this section only after two years from the last such docket entry."

expedition of justice and the court's control of its own docket"); *Honeycutt,* 96 S.W.3d at 89 (stating that "[i]t has long been recognized that a court necessarily has the inherent authority to control that docket in civil cases by dismissing for failure to prosecute where a case has languished too long"). *See generally Link,* 370 U.S. at 631, 82 S.Ct. at 1389 (stating that the fact that the inherent power to dismiss civil cases "has long gone unquestioned is apparent ... from the many state court decisions sustaining such dismissals").

The application of the inherent authority of a court to control its docket to permit *sua sponte* dismissal by the court of criminal prosecutions raises concerns not present in civil cases. The plaintiff in a civil case is a private party, representing personal interests. The prosecutor of criminal cases is the State, representing societal interests. Unlike in civil cases, the exercise of the inherent authority solely to control its docket to dismiss a criminal prosecution would limit the power of the executive branch to prosecute criminal cases on behalf of the public. *See Braunsdorf,* 297 N.W.2d at 816 (noting that "while dismissal in a civil case affects only the litigating parties, a dismissal in a criminal case has broader implications for society as a whole").

The action of the Circuit Court thus raises concerns of overlap between the judicial and executive branches. We will weigh the judicial and executive interests at issue in this conflict, and we will determine whether it is necessary for the performance of the judicial function to recognize a power to dismiss criminal prosecutions as a sanction for the violation of a scheduling order. In our consideration of the issue, we will be mindful of the separation of powers and avoid unnecessary intrusion upon the powers of the executive branch.

The State's Attorneys of Maryland are constitutional officers. *See* Constitution of Maryland, Art. 5, § 7 (declaring that "[t]here shall be an Attorney for the State in each county and the City of Baltimore, to be styled 'The State's Attorney' "). In *Murphy v. Yates,* 276 Md. 475, 348 A.2d 837 (1975), we traced the origin and scope of the powers of the State's

Attorneys. We concluded that the State's Attorneys have had the constitutional duty since 1851 to prosecute and defend on the part of the State all cases in which the State may be interested, subject only to constitutional limitations. *Id.* at 485–86, 348 A.2d at 843 (citing Article 5, § 9 of the current Maryland Constitution and the 1851 Maryland Constitution). This constitutional duty was derived from the common law and statutory powers and responsibilities formerly possessed by the Attorney General of Maryland. *Id.* at 491–92, 348 A.2d at 846. The powers of the State's Attorneys are codified in Md.Code (1957, 2001 Repl.Vol., 2004 Cum.Supp.), Art. 10 § 34, which provides that the State's Attorney shall "prosecute and defend, on the part of the State, all cases in which the State may be interested." *See id.* at 487, 348 A.2d at 844.

In *Murphy,* this Court held unconstitutional an act creating an office of Special Prosecutor because the General Assembly had no authority to reduce the constitutional powers of the State's Attorneys and the Attorney General. *Id.* at 494–95, 348 A.2d at 848. In the wake of *Murphy,* Article 5, § 9 of the Constitution was amended to provide that "[t]he State's Attorney shall perform such duties ... as shall be prescribed by the General Assembly," rather than "as prescribed by law." *See* 1976 Md. Laws, Chap. 545; *In re Special Investigation No. 244,* 296 Md. 80, 87, 459 A.2d 1111, 1114 (1983). This amendment permitted the General Assembly to limit the powers of the State's Attorneys. *See Special Investigation No. 244,* 296 Md. at 87, 459 A.2d at 1114 (stating that the amendment enabled the General Assembly to pass legislation creating the State Prosecutor).

State's Attorneys have broad discretion to determine which criminal cases to prosecute. In *Brack v. Wells,* 184 Md. 86, 40 A.2d 319 (1944), we explained the discretion of the State's Attorneys as follows:

"By the Constitution of Maryland, Article 5, Section 9, the State's Attorney shall perform such duties as may by law be prescribed. By section 33 of Article 10 of the Code, that officer is required to 'prosecute and defend, on the part of the State, all cases in which the State may be interested.'

In such prosecutions of persons accused of crime, he must exercise a sound discretion to distinguish between the guilty and the innocent. He must be trusted with broad official discretion to institute and prosecute criminal causes, subject generally to judicial control. The office is one not purely ministerial, but involves the exercise of learning and discretion. As a general rule, whether the State's Attorney does or does not institute a particular prosecution is a matter which rests in his discretion. Unless that discretion is grossly abused or such duty compelled by statute or there is a clear showing that such duty exists, mandamus will not lie."

*Id.* at 90, 40 A.2d at 321 (citations omitted) (upholding the refusal of the trial court to issue a writ of mandamus to the State's Attorney ordering him to prosecute a case); *see also Beverly v. State,* 349 Md. 106, 121, 707 A.2d 91, 98 (1998) (stating that "[i]t is well-settled that the determination of which criminal charges, if any, to bring is a matter of prosecutorial discretion"); *Babbitt v. State,* 294 Md. 134, 138, 448 A.2d 930, 934 (1982) (holding that the circuit court had no authority to appoint counsel for the State to initiate prosecution, because the court is not authorized "to assume the State's Attorney's constitutional power to determine when and if to prosecute" and the State's Attorney cannot "abrogate his constitutionally prescribed duty by simple acquiescence"); *Murphy,* 276 Md. at 495, 348 A.2d at 848 (describing the decision whether to prosecute as the State's Attorney's "most awesome discretionary power"); *Ewell v. State,* 207 Md. 288, 296–97, 114 A.2d 66, 71 (1955) (holding that a defendant seeking to strike his conviction could not present evidence of the general policy of the State's Attorney not to prosecute, because the decision to prosecute is within the discretion of the State's Attorney); *Winkles v. State,* 40 Md.App. 616, 621, 392 A.2d 1173, 1176 (1978) (holding that only the State's Attorney, and not a police officer, may agree not to prosecute, because a contrary holding "would infringe upon the discretion constitutionally committed to the State's Attorney").

We addressed a similar conflict between the broad discretion of the State to prosecute cases and the inherent authority of the court to control its docket in *Gonzales v. State,* 322 Md. 62, 585 A.2d 222 (1991). In that case, the judge dismissed the indictment for lack of prosecution, because the State had failed to request that Gonzales be brought from the detention facility to court. We held that even assuming *arguendo* that a trial judge has inherent power to dismiss an indictment for lack of prosecution, the trial judge abused his discretion. *Id.* at 75, 585 A.2d at 229. We reasoned as follows:

"A fair trial is the entitlement of the 'People' as well as of an accused. Our system of criminal justice envisages a trial in accord with the law of the land to determine the guilt or innocence of an accused. *The State, as the representative of the public, may not be deprived of trying a person duly charged with the commission of a crime merely to teach the prosecutor a lesson for his lack of diligence in pursuing a prosecution, there being no constitutional or statutory rights of an accused to be timely tried involved.* A trial judge has the authority, of course, to control his docket. But, we think that the action of the trial judge here went beyond that authority. We believe that, in the peculiar circumstances of this particular case, the dismissal of the indictment did not meet the test for a sound exercise of judicial discretion. We find it to be more according to humor than law; more arbitrary than legal; more harsh than just; more capricious than abiding by the rules of reason."

*Id.* at 74–75, 585 A.2d at 228 (emphasis added).

The reasoning expressed in *Gonzales* applies to the instant case. The trial court has the inherent authority to control its docket and generally may issue a scheduling order pursuant to that authority. When the trial court sanctions a violation of the scheduling order by dismissing the prosecution, however, the court intrudes upon the interests of the State and the public. The resulting conflict invokes the following competing interests: (1) the need of the trial court to exercise control of its calendar and remedy the violation of its order, as protected

by the inherent authority to control its docket, and (2) the interest of society in public safety through the enforcement of criminal laws, as protected by the broad discretion given to the State's Attorneys to prosecute or dismiss criminal charges. The balance weighs heavily in favor of society's interests. The inherent authority of the trial court to control its docket cannot support by itself such a strong limitation on the broad discretion of the State's Attorneys.

Generally, and in this case, the power to sanction violations of scheduling orders by dismissing criminal prosecutions is not necessary for the performance of the judicial function. Even in cases, unlike the instant case, in which State disregard for or neglect of the court's scheduling order impairs the efficient functioning of the court, the court can ensure control of its docket through other means. For example, in *Daff v. State,* 317 Md. 678, 566 A.2d 120 (1989), we noted as follows:

"The court has the authority to control its docket, and it may force the State to proceed to trial or to enter a *nolle prosequi* when the case is called for trial on a regularly assigned trial date. Failure of the State to produce any evidence at the trial will necessarily result, as it did here, in an acquittal."

*Id.* at 687, 566 A.2d at 124–25.

The violation by the State of a scheduling order can be an affront to the court, but the court must utilize other means to rectify that affront. In the context of a scheduling order violation, *sua sponte* dismissal by the court of a criminal prosecution, in contravention of the broad discretion possessed by the State, is a disproportionate and unnecessary assertion of power. Mindful of the precept that inherent authority should be applied in serious matters that conflict with the interests of the other branches of government only in the rarest of circumstances and of the cooperative spirit that guides our relations with the other branches of government, we hold that a trial court does not have the power to dismiss a criminal indictment or other charging document merely for the violation of a scheduling order. Accordingly, the Circuit

Court did not have the authority to dismiss the State's charges against Wynn as a sanction for violating the court's scheduling order.

***JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.***

Chief Judge BELL joins in the judgment only.

Concurring Opinion by WILNER, J., which BATTAGLIA, and GREENE, JJ., join.

I agree with the result in this case, but I believe that some additional explanation is required.

I concur entirely with the Court's holding that a Maryland trial court has no conferred or inherent authority to dismiss a criminal case merely because a prosecutor has violated some provision of a scheduling order issued by the court.[1] To hold otherwise would empower judges to control the prosecution of criminal cases by the simple device of placing arbitrary and largely unreviewable requirements in scheduling orders—requirements that, in some instances, may be incapable of satisfaction by the State. This case illustrates that very problem. To dismiss an indictment because the prosecutor did not file a "line" within the time specified by the judge, even though the prosecutor acted reasonably and expeditiously to advance a retrial—which was the whole purpose of the order—is at least arbitrary and likely capricious as well.

The solution to prosecutorial foot-dragging or arbitrariness was provided in *Daff v. State*, 317 Md. 678, 566 A.2d 120 (1989). On the morning of trial, the prosecutor, faced with the fact that witnesses that he had failed to summon were not in court and being denied a postponement, announced that he would neither proceed with the case nor enter a *nolle prose-*

---

1. There may be situations in which a scheduling order provision simply mirrors a more fundamental requirement—speedy trial or trial date in conformance with Maryland Rule 4–271, for example—the violation of which *would* justify dismissal. In that setting, if there should be one, the dismissal would be based on the underlying requirement, not on the scheduling order.

*qui.* The trial court thereupon entered a verdict of not guilty. The State then filed a new criminal information charging the defendant with the same offenses. The trial court dismissed the information on double jeopardy grounds, and, when the Court of Special Appeals reversed that ruling on the ground that jeopardy had not attached, this Court, unanimously, reversed the intermediate appellate court and affirmed the trial court's ruling. In addressing the State's argument that a court has no authority either to dismiss a criminal case or enter a verdict of not guilty in that situation, we said:

"If the trial judge had no authority to dismiss the action for lack of prosecution, acceptance of the State's position would lead to the rather extraordinary result that the State could always secure a postponement simply by refusing to proceed. The court, in this situation, cannot force the State to enter a *nolle prosequi.* If the court is similarly without authority to dismiss the case for lack of prosecution, and, as the State maintains, cannot enter a binding verdict of acquittal, the State would be able to cause an impasse that would necessarily result in a delay until such time as the State felt it was ready to proceed. That result would be untenable. *The court has authority to control its docket, and it may force the State to proceed to trial or to enter a nolle prosequi when the case is called for trial on a regularly assigned trial date. Failure of the State to produce any evidence at the trial will necessarily result, as it did here, in an acquittal.*"

(Emphasis added). *See also Farrell v. State,* 364 Md. 499, 774 A.2d 387 (2001).

Therein lies the manner in which a court may properly control its docket. The judge in this case, in conformance with trial assignment procedures applicable in the Circuit Court for Montgomery County, could have set, or directed the setting of, a date for the retrial. Had he done so, the retrial would no doubt have proceeded and we would not be faced with this appeal. Had the prosecutor sought and been denied a postponement and then petulantly (or impetulantly) refused to proceed, the court could, and, indeed, would have been

required to, enter a verdict of not guilty based on insufficiency of evidence. When a case is properly called for trial, the State is put to the burden of producing legally sufficient evidence to convict, and if it fails to produce such evidence, for whatever reason, acquittal is mandated.

I can well appreciate a court's need to know in advance whether a prosecutor intends to proceed with a new trial—there are always other cases pending and trial schedules need to be prepared in advance—and I have no problem with the court, in a scheduling order, insisting that the prosecutor inform the court within a reasonable time and by a certain date whether the State intends to proceed. If the prosecutor fails to comply with such an order, the court can simply set the case in for trial on a date it chooses and deal with the prosecutor's dereliction in other ways. A formal or informal remonstrance, a complaint to the State's Attorney if it is an assistant who has been derelict, or even, if the violation is deliberate or particularly egregious, a complaint to the Attorney Grievance Commission, should suffice. In the most serious cases, resort to the contempt rules may be appropriate. Dismissal of the case is not required to maintain either the dignity or the efficiency of the court.