Opinion by
Raker, J.
In this interlocutory appeal, we must review this hydra headed case[1] involving double jeopardy, felony murder, second-degree murder, lesser included offenses and first-degree assault as a predicate for second-degree felony murder. The Court of Special Appeals held that after respondent, Tyshon Leteek Jones, was acquitted in jury trial number one of first-degree premeditated murder, second-degree specific-intent murder, robbery with a dangerous weapon, and robbery, he could not be tried in a subsequent trial for felony murder based upon first-degree assault because the re-trial was barred by the Double Jeopardy Clause of the United States Constitution. Jones v. State, 222 Md.App. 600, 619, 114 A.3d 266, 267 (2015).[2] We granted the State’s petition for writ of certiorari, State v. Jones, 444 Md. 638, 120 A.3d 766 (2015), and following briefing and argument on January 12, 2016, on *686 our own initiative, we asked the parties to brief and argue the following additional question:
“In deciding this case, should the Court re-consider its holding in Roary v. State, 385 Md. 217, 226-36, 867 A.2d 1095, 1100-6 (2005), as to whether first-degree assault may serve as a predicate for second-degree felony murder?”
State v. Jones, No. 52, 2016 Md. LEXIS 296 (May 20, 2016). We shall affirm the judgment of the Court of Special Appeals, overrule Roary v. State, 385 Md. 217, 867 A.2d 1095 (2005), and hold that first-degree assault may not serve as a predicate for second-degree felony murder when that assault is not collateral to the lethal act. We therefore reach the same result as the Court of Special Appeals, but not on the basis of double jeopardy.
I.
The Grand Jury for Montgomery County indicted Tyshon Leteek Jones with the offenses of first-degree premediated murder, robbery with a dangerous weapon, and use of a firearm in the commission of a crime of violence or felony. He proceeded to trial before a jury and the jury returned a verdict of not guilty to the charges of first-degree premeditated murder, second-degree specific-intent murder, robbery with a dangerous weapon, and robbery. The jury was unable to agree as to first-degree felony murder and use of a firearm in the commission of a crime of violence or felony, and the court declared a mistrial as to those counts.[3] Thereafter, the State sought to prosecute Jones for second-degree felony murder predicated on first-degree assault. Respondent interposed a plea of double jeopardy, which the court denied. *687 Respondent noted an interlocutory appeal to the Court of Special Appeals, which reversed on double jeopardy grounds. Jones, 222 Md.App. at 619, 114 A.3d at 267. We granted the State’s petition for certiorari,[4] and as indicated above, determined to re-reconsider our holding in Roary v. State, which is the foundation and predicate for petitioner’s charge for second-degree felony murder based on first-degree assault. Inasmuch as petitioner was acquitted in his jury trial of first-degree intentional murder, and second-degree intent to inflict serious harm murder, the only basis remaining for the State to proceed in a second prosecution was on second-degree felony murder based upon first-degree assault.
II.
We adopt the facts as set out by the Court of Special Appeals, as follows:
“Shortly before midnight on August 20, 2010, Julian Kelly was beaten, robbed, and shot by a group of men while on his way home from work. This criminal episode began when, according to witnesses, Kelly was surrounded by ‘maybe ... five’ men who began ‘kicking and punching’ him, upon his refusal to surrender his backpack and necklace. After he was knocked to the ground, one of Kelly’s assailants stood over him and shot him five times, three times in the torso and twice in the head, wounds from which Kelly died several weeks later.
*688 Identified as one of Kelly’s assailants, Jones was tried before a jury, in the Montgomery County circuit court, for his purported participation in Kelly’s robbery and murder. At trial, the State advanced two different theories of the role Jones played in the perpetration of those crimes. The first theory alleged that Jones, although not a participant in the robbery and the beating, shot Kelly after mistaking him for someone else. The second suggested that Jones had, in fact, participated in both the robbery and the beating and had shot Kelly when Kelly had refused to relinquish his belongings. In response, Jones, who did not testify at trial, attempted to establish through the testimony of several witnesses that he had merely been a bystander to the incident and that it had been one of Kelly’s assailants, not he, who had fired the fatal shots.
At the close of evidence, the court instructed the jury on first-degree murder, first-degree felony murder, second-degree murder with the intent to inflict serious bodily harm, armed robbery, robbery, and the use of a firearm in the commission of a felony or a crime of violence. With respect to first-degree felony murder, the court instructed the jury that, in order to convict Jones of that offense, it must find that Jones murdered Kelly ‘during the commission’ of an underlying felony and that, here, the underlying felony could have been either armed robbery, robbery, or assault in the first degree.
Section 2—201(a)(4) of the Criminal Law Article states that a murder ‘is in the first degree’ if it is ‘committed in the perpetration of or an attempt to perpetrate’ a number of enumerated felonies. Although robbery and armed robbery, two of the three offenses the court below included in its instructions, could underlie a finding of first-degree felony murder, first-degree assault cannot. Thus, both Jones and the State agree that that portion of the circuit court’s instructions was an incorrect statement of the law.
The jury found Jones not guilty of first-degree murder, second-degree murder with the intent to inflict serious bodily harm, robbery, and armed robbery. But, as previous *689 ly noted, it was unable to reach a verdict on the charges of first-degree felony murder and the use of a handgun in the commission of a felony or a crime of violence. When Jones moved for a mistrial with respect to those charges, the court granted that motion.
The State then informed Jones of its intention to retry him on the two verdictless counts, that is, first-degree felony murder and the use of a handgun in the commission of a felony or a crime of violence. Jones responded by moving for a judgment of acquittal as to the first-degree felony murder charge, asserting that, since first-degree assault was not a ‘predicate felony’ for a charge of first-degree felony murder, his acquittal on the charges of robbery and armed robbery meant that there was no felony that could serve as the underlying offense for the charge of first-degree felony murder. While conceding in its opposition to Jones’s motion that it could not retry Jones on first-degree felony murder, the State insisted that it could retry him on the charge of second-degree felony murder based on first-degree assault because, though first-degree assault is not an underlying felony for a charge of first-degree felony murder, it can serve as an underlying felony for a charge of second-degree felony murder.
After the court, at the hearing that ensued on Jones’s motion, granted a judgment of acquittal as to first-degree felony murder, it turned to the State’s request to retry Jones on the charge of second-degree felony murder based on first-degree assault. Jones asserted that the constitutional prohibition against double jeopardy barred the State from proceeding on such a charge. The circuit court, however, flatly rejected that claim. It stated that second-degree felony murder based on first-degree assault was a ‘viable’ charge as it arose ‘out of the facts of this case’ and because Jones had ‘not been acquitted’ of it or of the underlying offense of first-degree assault. Consequently, the court declared that ‘double jeopardy would not bar the prosecution’ of Jones on the charge of second-degree felony murder based on first-degree assault.”
*690 Jones, 222 Md.App. at 606-08, 114 A.3d at 269-60 (internal footnotes omitted).[5]
III.
We address first the State s jurisdictional argument presented in its supplemental brief, asserting that this Court does not have jurisdiction to reconsider Roary v. State in this case because this appeal comes before the Court pursuant to the collateral order doctrine as an interlocutory appeal. As such, the State argues, we are restricted narrowly in considering that Order, which does not include re-considering Roary v. State, and that a question outside of our interlocutory jurisdiction cannot be appended to one that is within the Order.
Respondent argues that this Court has jurisdiction to reconsider Roary v. State because the question of whether second-degree felony murder predicated on first-degree assault is a cognizable crime in Maryland underlies—and its abrogation would solve—the double jeopardy question sub judice. In other words, the double jeopardy issues in this case exist because Roary v. State created them; whether assault with a firearm can serve as a predicate for second-degree felony murder is an issue of first impression; the question of whether to overrule Roary v. State is integral to the double jeopardy question; and its abrogation would resolve the double jeopardy issues that conferred jurisdiction in the first place.
We hold that this Court has jurisdiction to decide the issue embodied in the supplemental question raised by the Court: Should this Court reconsider the holding in Roary v. *691 State? This Court has fundamental jurisdiction to overrule a prior decision of the Court, and has the inherent authority to consider an issue that is inextricably intertwined to the issue before it. See Wynn v. State, 388 Md. 423, 431-39, 879 A.2d 1097,1102-07 (2005).
As we noted in Wynn, “[t]he concept of inherent authority, thus, is grounded in the understanding that courts possess certain powers in order to function as courts. Similarly, inherent authority is necessary to protect the role of the judiciary within the constitutional separation of powers.” Id. at 433, 879 A.2d at 1103. The notion that a court is powerless to correct a prior legal principle and must decide a case based upon a principle it disagrees with is inconsistent with the inherent power the court possesses to review and to correct prior analyses as well as the development of the common law. The common law method is subject to judicial reappraisal and modification. Overruling a prior decision of this Court is likewise inherent in the common law method that is open to reappraisal. Under the circumstances presented herein, where the issue was created by Roary v. State and is inextricably intertwined with the appeal issues, this Court has the inherent power to overrule Roary v. State, a prior decision of this Court.
The Supreme Court of Wisconsin described the power that inheres in courts as follows:
“In order to accomplish the purposes for which they are created, courts must also possess powers. From time immemorial, certain powers have been conceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. These powers are called inherent powers .... ‘The inherent power of the court is the power to protect itself, the power to administer justice .,the power to promulgate rules for its practice; and the power to provide process where none exists. It is true that the judicial power of this court ivas created by the Constitution, but upon *692 coming into being under the Constitution, this court came into being with inherent powers.’ ”
State v. Cannon, 196 Wis. 534, 221 N.W. 603, 603-04 (1928) (quoting In re Bruen, 102 Wash. 472, 172 P. 1152, 1153 (1918)) (emphasis added).
The State relies on Rush v. State, 403 Md. 68, 939 A.2d 689 (2008), for the proposition that this Court does not have jurisdiction to reconsider Roary v. State in this interlocutory-appeal. In Rush, the State noted an interlocutory appeal when the suppression court granted Rush’s motion to suppress a statement taken in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Rush involved the limits of the State’s statutory right to an interlocutory appeal under § 12-302(c)(3) of the Courts and Judicial Proceedings Article, while the appeal sub judice is based upon the common law collateral order doctrine. The distinction is of consequence as the strictures of the statute are far more definite and finite than the doctrine applied here. The scope of the jurisdiction conferred is different. Beyond that fact, Rush involved an evidentiary matter, which raises different considerations, as we noted in Neal v. State, 272 Md. 323, 322 A.2d 887 (1974):
“We do not share the view that a determination that double jeopardy does or does not exist involves an exercise of discretion. To us, the defense of double jeopardy is a liminal constitutional issue, raised at the outset, before there is a trial. It can in no way be compared to a finding that a defendant is not in fact indigent. Neither can it be analogized to questions involving the admissibility of evidence, raised during trial, even though constitutional issues are involved.”
Id. at 326, 322 A.2d at 889 (emphasis added).
The cognizability of the charge of second-degree felony murder predicated on first-degree assault is part of the double jeopardy issue raised in Respondent’s appeal. Respondent, by his double jeopardy question, raises a collateral issue to the merits of the underlying case, “contesting the very authority of the Government to hale him into court to face trial on the *693 charge against him.” Ordinarily, a question of whether the crime alleged is cognizable is independent of the merits of the case against respondent. For the double jeopardy question before us, however, whether the crime alleged is cognizable is not independent of the issue we must decide and it is inextricably intertwined with the double jeopardy question.
We analyze an autrefois acquit double jeopardy question using the Blockburger test—whether the elements of one crime are the same as those in another crime. See Blockburger v. U.S., 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The Blockburger analysis requires evaluation of the similarity of the elements of two criminal offenses. State v. Ferrell, 313 Md. 291, 298, 545 A.2d 653, 656 (1988). We break down a criminal charge to its elements and consider it in that form. Id. A question of whether one of those crimes, or sets of elements, is cognizable or not under the law, is essential to the Blockburger analysis. If we evaluate one of the crimes and determine that it should not be a criminal offense in Maryland, then the test is completed and the threat of double jeopardy is relieved. If, as a result of our analysis, we reconsider whether or not a criminal offense should be allowed to proceed at all, that outcome is part of our double jeopardy analysis, and also stands.
This analysis is sui generis and will not open the floodgates, as the State suggests, to interlocutory appeals of all motions to dismiss based on grounds that a particular crime is not cognizable. Here, as noted, the issue we must decide is inextricably intertwined with the double jeopardy issue. The question of whether assault in the first-degree may serve as a predicate for second-degree felony murder as a cognizable crime is an integral part of the double jeopardy question before us. Petitioner’s right to challenge the State’s right to try him against being twice put to trial for the same offense includes inherent consideration of whether the offense alleged is one which could support the felony murder charge, particularly whether first-degree assault with a firearm may serve as a predicate for second-degree felony murder.
*694 IV.
Both certiorari questions are predicated upon this Court’s opinion in Roary v. State, 385 Md. 217, 867 A.2d 1095 (2005), holding that first-degree assault is a proper underlying felony to support a second-degree felony murder conviction. We held the following in Roary v. State:
“We hold, that an assault in the first-degree, when committed in a manner inherently dangerous to human life, as in this case, may be a predicate felony for second-degree felony-murder. Thus the trial court did not err in submitting to the jury second-degree felony murder based upon an assault in the first degree. We recognize that our relatively strict adherence to the common law felony-murder doctrine is not favored by a number of other States as explained supra; nothing in our case law or research, however, has persuaded us that the rule in Maryland should be otherwise.”
Id. at 236, 867 A.2d at 1106.
We take this opportunity to re-examine Roary v. State, to overrule it and to adopt the so-called “merger doctrine” in Maryland.[6] A common limitation of the application of the felony-murder doctrine is the merger doctrine. The merger doctrine, first conceived in the nineteenth century, bars the application of the felony-murder doctrine whenever the underlying felony is an integral element of the homicide. In other words, to support a charge of felony murder, the underlying felony must be independent of the homicide. See Barnett v. State, 783 So.2d 927, 930 (Ala. Crim. App. 2000); State v. Essman, 98 Ariz. 228, 403 P.2d 540, 545 (1965) (en banc); People v. Chun, 45 Cal.4th 1172, 91 Cal.Rptr.3d 106, 203 P.3d 425, 434-35 (2009); People v. Ireland, 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580, 590-91 (1969) (en banc); State v. Clark, 204 Kan. 38, 460 P.2d 586, 590 (1969); State v. Shock, 68 Mo. 552, 561-62 (Mo. 1878); State v. Hanes, 729 S.W.2d *695 612, 617 (Mo. Ct. App. 1987); People v. Moran, 246 N.Y. 100, 158 N.E. 85, 36 (1927).
Thus, because second-degree felony murder based upon first-degree assault, where the killing does not arise separate from the assault, cannot be a predicate for second-degree felony murder, we do not address whether trying respondent in a successive prosecution for second-degree felony murder based upon first-degree assault violates his protection embodied in the Double Jeopardy Clause of the United States Constitution, or the Maryland common law doctrine of autre-fois acquit or autrefois convict.[7] It goes without saying that we need not address respondent’s motion to dismiss,[8] or whether first-degree assault is an inherently dangerous felony *696 capable of serving as a predicate felony for second-degree felony murder, or whether first-degree assault with the intent to cause serious physical injury is a lesser included offense of second-degree intent to inflict grievous bodily harm murder, because first-degree assault can no longer serve as a predicate for second-degree felony murder when that assault arises out of the homicidal act causing the death of the victim.
We hold that, if the assaultive act causing the injury is the same act that causes the victim’s death, the assault is merged into the murder and therefore cannot serve as the predicate felony for felony-murder purposes. We realize that this view is inconsistent with Roary v. State. We therefore overrule that case, insofar as it holds that the assaultive act constituting willful injury and also causing the victim’s death may serve as a predicate felony for felony-murder purposes. The rule of law we announce today in this case regarding the use of willful injury as a predicate felony for felony-murder purposes shall be prospective only and applicable to this case and those cases not resolved finally on direct appeal.
V.
At common law, a person’s conduct bringing about an unintended death in the commission or attempted commission of a felony was guilty of murder, Wayne R. LaFave, substantive criminal law § 14.5(a) 444 (2nd ed. 2003). That rule is known as the felony-murder rule, intended to “deter dangerous conduct by punishing as murder a homicide resulting from dangerous conduct in the perpetration of a felony, even if the defendant did not intend to kill.” Fisher, 367 Md. at 262, 786 A.2d at 732. Underlying the doctrine is the recognition that in society’s judgment, a felony committed intentionally that causes the death of another person is qualitatively more serious than an identical felony that does not. See David Crump & Susan Waite Crump, In Defense of the Felony Murder Doctrine, 8 Harv. J.L. & Pub. Pol’y 359, 363 (1985). To obtain a conviction for felony-murder in Maryland, the State must prove the underlying felony and that the death *697 occurred during the perpetration or in furtherance of the felony. Newton v. State, 280 Md, 260, 269, 373 A.2d 262, 267 (1977). “Without proof of the underlying felony, there can be no conviction for felony murder.” Hook v. State, 315 Md. 25, 32, 553 A.2d 233, 236 (1989).
Maryland Code Ann., Crim Law § 2-201 (2002; 2012 Repl. Vol, 2016 Supp.)[9] provides that certain forms of murder shall be murder in the first-degree. More particularly, § 2-204 provides in pertinent part, “a murder that is not in the first-degree under § 2-201 of this subtitle is in the second-degree.” Maryland Code Ann., Crim Law § 2-204 (2002; 2012 Repl. Vol, 2016 Supp.). The statute does not create any new statutory crimes, but instead divides the crime of murder, as known at common law, into degrees, first and second-degree. Jackson v. State, 286 Md. 430, 435-36, 408 A.2d 711, 715 (1979); State v. Frye, 283 Md. 709, 712-13, 393 A.2d 1372, 1373-74 (1978); Davis v. State, 39 Md. 355, 374 (1874).
In Maryland, murder in the first-degree under § 2-201 is defined by statute as follows:
“(a) In general—A murder is in the first degree if it is:
(1) a deliberate, premeditated, and willful killing;
(2) committed by lying in wait;
(3) committed by poison; or
(4) committed in the perpetration of or an attempt to perpetrate:
(i) arson in the first degree;
(ii) burning a barn, stable, tobacco house, warehouse, or other outbuilding that:
1. is not parcel to a dwelling; and
2. contains cattle, goods, wares, merchandise, horses, grain, hay, or tobacco;
(iii) burglary in the first, second, or third degree;
(iv) carjacking or armed carjacking;
*698 (v) escape in the first degree from a State correctional facility or a local correctional facility;
(vi) kidnapping under § 3-602 or § 3-503(a)(2) of this article;
(vii) mayhem;
(viii) rape;
(ix) robbery under § 3-402 or § 3-403 of this article;
(x) sexual offense in the first or second degree;
(xi) sodomy; or
(xii) a violation of § 4-603 of this article concerning destructive devices.”
The felony-murder doctrine, imposing murder liability for some unintended killings in the course of some felonies, is part of Maryland law, and indeed, of almost every American jurisdiction.[10] See Guyora Binde, Making the Best of Felony Murder, 91 B.U.L. Rev. 403, 404 (2011). The doctrine is part of Maryland jurisprudence, both as a matter of common law and by statute. See Fisher, 367 Md. at 247-61, 786 A.2d at 724-26; § 2-201 (a)(4). Nonetheless, while part of Maryland jurisprudence, and most American jurisdictions, the felony-murder doctrine has been described as “a highly artificial concept that deserves no extension beyond its required application.” People v. Phillips, 64 Cal.2d 574, 51 Cal.Rptr. 225, 414 P.2d 353, 360 (1966), overruled on other grounds by People v. Flood, 18 Cal.4th 470, 76 Cal.Rptr.2d 180, 957 P.2d 869, 882 n. 12 (1998). See also Campbell v. State, 293 Md. 438, 451, 444 A.2d 1034, 1042 (1982); People v. Aaron, 409 Mich. 672, 299 N.W.2d 304, 312 (1980); Commonwealth ex rel. Smith v. Myers, 438 Pa. 218, 261 A.2d 550, 555 (1970).
*699 In Fisher, this Court considered the question of whether “in Maryland, the crime of [second-degree] murder may be established under the [common law] felony-murder doctrine utilizing child abuse as the felony.” 367 Md. at 246, 786 A.2d at 723. Concluding that child abuse of the character and degree described in the evidence of that case is inherently dangerous, we held that “the acts and omissions constituting the statutory felony of child abuse, proscribed by § 35C, but not included in §§ 408 through 410, are the basis, under the circumstances of this case, for applying the felony-murder doctrine.” Id, at 226, 786 A.2d at 710 (emphasis added). We recognized that the felonies identified in the first-degree murder statute are not the exclusive felonies that may be a predicate for second-degree felony murder. Id. at 251, 786 A.2d at 726. We concluded that the felonies that would support a conviction for common law second-degree felony murder are not limited to those felonies that existed at common law but include those felonies sufficiently dangerous to life to justify application of the doctrine. Id. at 253-54, 786 A.2d at 727. Whether the predicate felony is considered “dangerous to life” is determined by the nature of the crime or by the manner in which it was perpetrated in a given set of circumstances. Id. at 263, 786 A.2d at 733. Finally, “[i]f the felonious conduct, under all of the circumstances, made death a foreseeable consequence, it is reasonable for the law to infer from the commission of the felony under those circumstances the malice that qualifies the homicide as murder.” Id. at 262, 786 A.2d at 732.[11]
Following Fisher, in Roary v. State, this Court was presented with the question of whether first-degree assault is a viable underlying felony for common-law second-degree felony murder. In that case, Michael Roary and his three friends chased the victim, and dropped a boulder on his head twice. Roary, *700 385 Md. at 222, 867 A.2d at 1097. The victim later died as a result of those injuries. He was convicted of, inter alia, second-degree felony murder with first-degree assault as the predicate felony, involuntary manslaughter, and first and second-degree assault. Id. at 224, 867 A.2d at 1099. We held that first-degree assault may serve as a predicate felony for a second-degree felony murder conviction. Id. at 236, 867 A.2d at 1106. We expressly declined “to modify the common law of this State to adopt the so-called ‘merger’ doctrine.” Id. at 222, 867 A.2d at 1098. We concluded, however, with the following qualifying statement:
“Whether Maryland should or needs to adopt a similar modification to the felony-murder rule, however, need not be decided today as the facts of the case do not remotely raise the issue of mitigation.”
Id. at 235, 867 A.2d at 1105. The instant case raises squarely the unintended and undesirable consequences of assault as a predicate for felony murder and calls out for this Court to reconsider the adoption of the merger doctrine, which we shall do.
Chief Judge Cardozo’s discussion in People v. Moran, 246 N.Y. 100, 158 N.E. 35, 36 (1927), of the necessity for an independent underlying felony has been cited and quoted often in the New York Court of Appeals and other discussions of the “merger doctrine.” Moran was convicted of murdering a police officer. Id. at 36. The only theory presented to the jury for the murder charge was felony murder. In reversing, the court held that the felonious assault resulting in the death could not be the underlying felony for felony murder. Id. In an oft-quoted passage, the court explained as follows:
“Homicide is murder in the first degree when perpetrated with a deliberate and premeditated design to kill, or, without such design, while engaged in the commission of a felony. To make the quality of the intent indifferent, it is not enough to show that the homicide was felonious, or that there was a felonious assault which culminated in homicide. Such a holding would mean that every homicide, not justifiable or excusable, would occur in the commission of a *701 felony, with the result that intent to kill and deliberation and premeditation would never be essential. The felony that eliminates the quality of the intent must be one that is independent of the homicide and of the assault merged therein, as, e. g., robbery or larceny or burglary or rape.”
Id. at 36 (internal citations omitted) (emphasis added).
The Supreme Court of California addressed the issue of whether assault with a deadly weapon could serve as the predicate felony for a felony-murder conviction in People v. Ireland, 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580 (1969) (en banc). Ireland was charged with shooting and killing his wife. Id., 75 Cal.Rptr. 188, 450 P.2d at 582-83. Applying the “merger doctrine” and requiring an independent felony, the court explained as follows:
“We have concluded that the utilization of the felony-murder rule in circumstances such as those before us extends the operation of that rule ‘beyond any rational function that it is designed to serve.’ To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault—a category which includes the great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law. We therefore hold that a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included in fact within the offense charged.”
Id., 75 Cal.Rptr. 188, 450 P.2d at 590 (internal citation omitted) (emphasis added). The California Supreme Court explained later the development of the “merger doctrine” as follows:
“Prior to our decision in Ireland, the ‘merger’ doctrine had been developed in other jurisdictions as a shorthand explanation for the conclusion that the felony-murder rule should not be applied in circumstances where the only underlying *702 (or ‘predicate’) felony committed by the defendant was assault. The name of the doctrine derived from the characterization of the assault as an offense that ‘merged’ with the resulting homicide. In explaining the basis for the merger doctrine, courts and legal commentators reasoned that, because a homicide generally results from the commission of an assault, every felonious assault ending in death automatically would be elevated to murder in the event a felonious assault could serve as the predicate felony for purposes of the felony-murder doctrine. Consequently, application of the felony-murder rule to felonious assaults would usurp most of the law of homicide, relieve the prosecution in the great majority of homicide cases of the burden of having to prove malice in order to obtain a murder conviction, and thereby frustrate the Legislature’s intent to punish certain felonious assaults resulting in death (those committed with malice aforethought, and therefore punishable as murder) more harshly than other felonious assaults that happened to result in death (those committed without malice aforethought, and therefore punishable as manslaughter). (See Note, The Doctrine of Merger in Felony-Murder and Misdemeanor-Manslaughter (1960) 35 St. Johns L. Rev. 109, 117; see also Crump & Crump, In Defense of the Felony Murder Doctrine (1985) 8 Harv. J. L. & Pub. Pol’y. 359, 379; Note, Application of the Merger Doctrine to the Felony-murder rule in Texas: The Merger Muddle (1990) 42 Baylor L. Rev. 535; People v. Moran (1927) 246 N.Y. 100 [158 N.E. 35, 36-37] (opn. of Cardozo, C. J.).) One commentator explains that the merger rule applied to assaults is supported by the policy of preserving some meaningful domain in which the Legislature’s careful graduation of homicide offenses can be implemented. (Crump & Crump, In Defense of the Felony Murder Doctrine, op. cit. supra, 8 Harv. J. L. & Pub. Pol’y. 359, 379.).”
People v. Hansen, 9 Cal.4th 300, 36 Cal.Rptr.2d 609, 885 P.2d 1022, 1028 (1994), overruled on other grounds by People v. Chun, 45 Cal.4th 1172, 91 Cal.Rptr.3d 106, 203 P.3d 425 *703 (2009).[12]
Along with New York and California, Kansas also expressed the concern that the use of felonious assault as a predicate for felony murder would result in an obliteration of the different grades of homicide. In Fisher v. State, 120 Kan. 226, 243 P. 291 (1926), the Kansas Supreme Court rejected assault with a deadly weapon as a basis for a felony-murder conviction and embraced the merger rule, stating as follows:
“This contention cannot be sustained. The effect of it would be to make any homicide, not excusable or justified, which by our statute, is defined to be manslaughter in any of the degrees or murder in the second degree, to constitute murder in the first degree. In other words, there could, under this interpretation of the statute, be no such thing as any lower degree of homicide than murder in the first degree.”
Id. at 293; see also State v. Branch, 244 Or. 97, 415 P.2d 766, 767 (1966) (en banc) (observing that in order to preserve the distinctions between degrees of murder and manslaughter, courts have held that assault merges with the killing and cannot be the predicate for felony murder).
In the years since Moran, Ireland, Fisher, and Branch, many states considering this issue have adopted some version of the merger rule for first-degree assaults resulting in the death of the victim. See Garrett v. State, 573 S.W.2d 543, 545 (Tex. Crim. App. 1978) (noting that applying the felony-murder rule in such instances “has been rejected in the vast majority of jurisdictions throughout the United States where it is held that a felonious assault resulting in death cannot be *704 used as the felony which permits application of the felony-murder rule to the resulting homicide.”). See generally Robert L. Simpson, Annotation, Application of Felony-Murder Doctrine Where The Felony Relied Upon Is an Includible Offense with the Homicide, 40 A.L.R.3d 1341.
In Roary v. State we rejected the “merger doctrine” and held that first-degree assault with the intent to inflict serious physical injury was a viable predicate for second-degree felony murder. Roary, 385 Md. at 222, 867 A.2d at 1098. Today, we overrule Roary v. State and hereby join the majority of jurisdictions in this country which have adopted the “merger doctrine” in these circumstances.
We are ever mindful that an appellate court should not overrule a previous decision without a basis of changing conditions or serious judicial error in interpretation sufficient to justify deviation from the well-recognized doctrine of stare decisis. Nonetheless, every court recognizes that the rule of stare decisis is not ironclad or absolute. Unger v. State, 427 Md. 383, 417, 48 A.3d 242, 261-62 (2012). Courts recognize the power to decline to follow the doctrine when persuaded the prior decision is wrong. Meyer v. State, 445 Md. 648, 668-69, 128 A.3d 147, 159-60 (2015); Thompson v. UBS Fin. Servs., Inc., 443 Md. 47, 58, 115 A.3d 125, 131 (2015); Cure v. State, 421 Md. 300, 320-322, 26 A.3d 899, 910-912 (2011); Harris v. Board of Education, 375 Md. 21, 59, 825 A.2d 365, 387-88 (2003); State v. Kanaras, 357 Md. 170, 184, 742 A.2d 508, 516 (1999); Owens-Illinois v. Zenobia, 325 Md. 420, 470-471, 601 A.2d 633, 657-58 (1992); Townsend v. Beth.-Fair. Shipyard, 186 Md. 406, 417, 47 A.2d 365, 370 (1946).
The West Virginia Supreme Court explained cogently the application of the rule of stare decisis as follows:
"... the rule is not in any sense ironclad, and the future and permanent good to the public is to be considered, rather than any particular case or interest .... Precedent should not have an overwhelming or despotic influence in shaping legal decisions .... The benefit to the public in the future is of greater moment than any incorrect decision in the past. *705 Where vital and important public and private rights are concerned, and the decisions regarding them are to have a direct and permanent influence in all future time, it becomes the duty as well as the right of the court to consider them carefully, and to allow no previous error to continue, if it can be corrected. The reason that the rule of stare decisis was promulgated was on the ground of public policy, and it would be an egregious mistake to allow more harm than good to accrue from it. Much, not only of legislation, but of judicial decision, is based upon the broad ground of public policy, and this latter must not be lost sight of.”
Adkins v. St. Francis Hosp., 149 W.Va. 705, 143 S.E.2d 154, 163 (1965) (quoting Am & Eng. Ency., Law (1st Ed.) 36) (emphasis added).
Justice Stewart’s argument urging the Court to overrule Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1970), is persuasive, noting that the Court is correct in overruling erroneous precedent and echoing Justice Frankfurter’s belief that wisdom should not be discarded merely because it comes late. Boys Market, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 255, 90 S.Ct. 1583, 1595, 26 L.Ed.2d 199 (1970) (Stewart, J., concurring). As Justice Powell stated “where it becomes clear that a wrongly decided case does damage to the coherence of the law, overruling is proper.” Lewis F. Powell, Jr., Stare Decisis and Judicial Restraint, 47 Wash. & Lee L. Rev. 281, 286 (1990). There is much scholarly support for the idea that it is better to correct an erroneous precedent than to perpetuate error. Richard Wasserman, in in his book on stare decisis, explained as follows:
“The liberal rule ... is one which therefore allows for flexibility and growth; under its dictates precedents need not always be followed. The doctrine ... allows for both definite expectation and innovations .... And if the judge should conclude that the prior cases were wrongly decided—that the precedents are incorrect—then the cases should be openly overruled. For if the rule of stare decisis demanded that precedents be followed regardless of the *706 amount of good or harm produced in society by so doing, then this rule might be open to the objection that certainty is being procured at too great a price.”
Richard A. Wasserstrom, the judicial decision 50-51 (1961) (internal citations omitted). See also John R. Schmidhauser, CONSTITUTIONAL LAW IN THE POLITICAL PROCESS 505-07 (1963); Karl Llewellyn, The Bramble Bush 68 (1951); David L. Shapiro, Essays Commemorating the One Hundredth Anniversary of the Harvard Law Review: In Defense of Judicial Candor, 100 Harv. L. Rev. 731, 734 (1987).
With these considerations in mind, we find good and sufficient cause in favor of overruling Roary v. State, which held that first-degree assault was a viable predicate for second-degree felony murder. Roary, 385 Md. at 222, 867 A.2d at 1098. The holding of Roary v. State, that assault in the first-degree may serve as a predicate for second-degree felony murder is wrong in that it expands unwisely felony murder and elevates practically all shooting deaths in Maryland to second-degree felony murder, thereby effectively eliminating the crime of manslaughter. The instrumentality of death in Roary was a boulder. The instrumentality here is a gun. Hence, we overrule it before that case creates more undesirable consequences for the criminal law in Maryland, as pointed out in the dissent in Roary. Id. at 255, 867 A.2d at 1117 (Raker, J., dissent). We join the large majority of our sister states and conclude that the better and more legally sound approach is to adopt the “merger rule” and require that for second-degree felony murder, the inherently dangerous predicate felony must be one that is independent of the homicide. We arrive at this conclusion for the following reasons.
Time has shown us that Roary v. State was decided wrongly for several reasons. It was contrary to our own jurisprudence which has stated often that the felony-murder rule should not be expanded. See Campbell, 293 Md. at 451-52, 444 A.2d at 1042 (stating that “[w]e are persuaded that the felony-murder doctrine should not be extended beyond its traditional com *707 mon law” and expressly declining to extend the felony-murder doctrine to situations involving lethal acts of non-felons because such an extension would not achieve the purpose of the rule).
Further, contrary to the trend around the country, and established Maryland jurisprudence limiting the scope of felony murder, “the court’s decision [in Roary v. State] unwisely and unnecessarily extends the scope of second-degree common-law felony murder in Maryland.” Marcia J. Simon, Note, An Inappropriate and Unnecessary Expansion of Felony Murder in Maryland, 65 Md. L. Rev. 992 (2006). Shortly after Roary was announced by this Court, the decision was criticized strongly in the Maryland Law Review. Marcia J. Simon pointed out the flaws and errors in the Court’s reasoning, noting as follows:
“In reaching its decision, the court rejected the merger doctrine, which precludes felonious assault as a predicate for felony murder. Instead, the court mistakenly relied on a deterrence rationale that emphasized conduct rather than intent. The court’s deterrence justification was flawed, however, because it incorrectly presumed that rejecting the merger doctrine would deter dangerous assaults. Moreover, by focusing on conduct rather than intent, the court failed to consider individual culpability and proportionality, two cornerstones of modern criminal law. This misguided approach renders the statutory punishment scheme for homicide largely ineffective and will, as it did in Roary, lead to illogical, disproportionate punishments. Finally, the court’s decision to allow assault as a predicate to felony murder permits prosecutors to circumvent the requirement to prove intent to kill and subsumes much of Maryland’s second-degree murder and manslaughter law into felony murder.
The court should have instead followed the lead of a number of other states and adopted the merger doctrine to preclude assault as a predicate for felony murder. In doing so, the court would have imposed a reasonable limitation on the *708 felony-murder doctrine while preserving an appropriate punishment scheme for homicide in Maryland.”
Id. at 992-93 (internal citations omitted).
 VI.
As we have noted, second-degree felony murder is an unlawful killing in the course of the commission of a felony that is inherently dangerous to human life but is not included among the felonies enumerated in § 2-201. This Court has recognized that felony murder should not be enlarged and we have, in fact, restricted its application. In Fisher, we noted that “in order to ameliorate the harshness of the strict common law felony murder doctrine, many jurisdictions limit the predicate felonies to those that are dangerous to human life” 367 Md. at 254, 786 A.2d at 727. In order to maintain the integrity of the different levels of culpability of murder and manslaughter and to ameliorate its perceived harshness, today we adopt the “merger doctrine” and we hold that first-degree assault that results in the victim’s death merges with the homicide and therefore cannot serve as an underlying felony for the purposes of the felony murder rule. Roary v. State, 385 Md. 217, 867 A.2d 1095 (2005), is overruled. First-degree assault, either intent to inflict serious physical injury or assault with a firearm, cannot, as a matter of law, serve as the underlying felony to support felony murder. The assaultive act merges into the resultant homicide, and may not be deemed a separate and independent offense that could support a conviction for felony murder. Where the only felony committed (apart from the murder itself) was the assault upon the victim that resulted in the death of the victim, the assault merges with the killing and cannot be the predicate for felony murder nor relied upon by the State as an ingredient of a felony murder.
OPINION OF THE COURT OF SPECIAL APPEALS VACATED, JUDGMENT AFFIRMED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR A NEW TRIAL ONLY ON THE CHARGE OF USE OF A HANDGUN IN THE COMMISSION OF A *709 CRIME OF VIOLENCE. COSTS TO BE PAID BY MONTGOMERY COUNTY.
Greene, Watts and Battaglia, JJ., dissent.

. Doe v. Hartz, 52 F.Supp.2d 1027, 1035 (N.D. Iowa 1999) describes hydra as follows:
“Hydra, sometimes called the 'Lemean hydra,’ was a many-headed serpent (usually described as having nine heads, actually less than the number of plaintiff’s claims) slain by Hercules, who had to overcome the problem that every time he cut off one of Hydra’s heads, it was replaced by two others. Hercules solved the problem by convincing his charioteer to bum the stumps as soon as Hercules knocked off one of Hydra’s heads, thus preventing the double regrowth. See, e.g., Funk and Wagnalls Standard Dictionary of Folklore, Mythology, and Legend 615 (Maria Leach, ed., Funk & Wagnalls, 1972); Thomas Bullfinch, Mythology 144 (Fuller abridged ed. 1959).”

. On remand, based upon the reasoning and holding of the Court of Special Appeals, the only charge the State could proceed to trial on would be use of a firearm charge. Jones, 222 Md.App. 600, 607 n.2, 114 A.3d 256, 260 n.2 (2015) (finding “Jones ... may be retried on the use of a [firearm] charge.”).

. After trial, the circuit court granted a motion for judgment of acquittal as to first-degree felony murder predicated on first-degree assault. At trial, the trial court and the parties concluded erroneously that first-degree assault satisfied the statutory requirement as a predicate for first-degree felony murder. Actually, first-degree assault is not included in the statutorily listed offenses as a predicate for first-degree felony murder. See Md. Code Ann., Crim. Law § 2—201(a)(4) (2002, 2012 Repl. Vol., 2016 Supp.).

. In the petition for writ of certiorari, the State asked us to consider the following questions;
“1. As a matter of first impression, where the modality of the commission of a first degree assault is the use of a firearm, is first degree assault an inherently dangerous felony capable of supporting a conviction for second degree felony murder or a non-inherently dangerous felony that would support a conviction for second degree felony murder only if committed in an inherently dangerous manner? 2. As a matter of first impression, where the modality of the commission of a first degree assault is the intent to cause or attempt to cause serious physical injury, is the first degree assault a lesser included offense of second degree intent-to-inflict-grievous-bodily-harm murder?”

. We add some additional procedural history in this case. On January 17, 2014, Jones noted an interlocutory appeal to the Court of Special Appeals, In a reported opinion dated April 29, 2015, the Court of Special Appeals reversed and remanded, holding that "a subsequent prosecution on the charge of second-degree felony murder based on first-degree assault would .,. violate the prohibition against double jeopardy” because second-degree specific-intent murder, "the offense of which Jones was acquitted, and second-degree felony murder based on first-degree assault, the charge upon which the State now wishes to proceed, are the same offense for double jeopardy purposes..., ” Jones, 222 Md.App. 600, 605, 619, 114 A.3d 256, 259, 267 (2015).

. The “merger doctrine” we adopt here today is different from the common law merger principle that applies in sentencing. See Roary, 385 Md. 217, 232 n. 14, 867 A.2d 1095, 1103 n. 14 (2005).

. Although respondent agrees with the result of the Court of Special Appeals in Jones v. State, 222 Md.App. 600, 114 A.3d 256 (2015), respondent and the State both disavow the Court's reasoning and analysis of the double jeopardy issue. Accordingly, although we affirm the judgment of the intermediate appellate court, we shall vacate that opinion.

. Jones moved to dismiss this appeal, contending that the prohibition on double jeopardy bars this appeal because the decision of the Court of Special Appeals acts as an "acquittal” as to second-degree felony murder predicated on first-degree assault, and thus “cannot be appealed or reviewed.” Jones argues that the Court of Special Appeals’ decision is an acquittal because that Court concluded that the prohibition on double jeopardy bars a prosecution for second-degree felony murder predicated on first-degree assault, as that crime and second-degree specific-intent murder “are the same offense for double jeopardy purposes.” Jones, 222 Md.App. 600, 605, 114 A.3d 256, 259 (2015). Jones asserts that the Court of Special Appeals essentially concluded that the acquittal as to second-degree specific-intent murder was also an acquittal as to second-degree felony murder predicated on first-degree assault.
In light of our holding that first-degree assault cannot serve as a predicate for second-degree felony murder, we do not consider respondent's motion to dismiss. On the merits, were we to consider the motion, we would deny it. Simply put, the prohibition on double jeopardy does not bar our review in this case because the decision of the Court of Special Appeals is not an "acquittal.” In other words, that Court’s decision was not a "resolution ... of some or all of the factual elements of the offense charged.” Giddins v. State, 393 Md. 1, 19, 899 A.2d 139, 149 (2006) (quoting Smith v. Massachusetts, 543 U.S. 462, 468, 125 S.Ct. 1129, 1134, 160 L.Ed.2d 914, 923 (2005)).

. Unless otherwise indicated, all subsequent statutory references herein shall be to Md. Code Ann., Criminal Law Article.

, Hawaii, Kentucky, and Ohio have abolished felony-murder. W.E. Shipley, Annotation, Judicial Abrogation of Felony-Murder doctrine, 13 A.L.R.4th 1226. The Model Penal Code recommends elimination of felony-murder. Model Penal Code § 210.2 cmt. 6, at 37-39. See also Guyora Binde, Making the Best of Felony Murder, 91 B.U.L. Rev. 403, 419(2011).

. It is important to remember that Fisher v. State, 367 Md, 218, 786 A.2d 706 (2001), dealt with the offense of child abuse as the predicate felony for second-degree felony murder and not the use of a firearm. Id. One of the motivating forces in the Fisher analysis appears to be that without second-degree felony murder application, the homicide might go unpunished. Id,

. People v. Hansen held that the offense of discharging a firearm at an inhabitable dwelling does not merge with a resulting homicide within the Ireland doctrine. 9 Cal.4th 300, 36 Cal.Rptr.2d 609, 885 P.2d 1022, 1031 (1994). In People v. Chun, the California Supreme Court reversed Hansen, holding that “[w]hen the underlying felony is assaultive in nature, such as a violation of section 246 or 246.3, we now conclude that the felony merges with the homicide and cannot be the basis of a felony-murder instruction. An ‘assaultive’ felony is one that involves a threat of immediate violent injury.” 45 Cal.4th 1172, 91 Cal.Rptr.3d 106, 203 P.3d 425, 443 (2009).